### COUNTY OF CALEDONIA,

#### AT THE

#### AUGUST TERM, 1864.

---

#### PRESENT:

Hon. ASA O. ALDIS,
Hon. JAMES BARRETT,
Hon. LOYAL C. KELLOGG, } ASSISTANT JUDGES.
Hon. ASAHEL PECK,

---

## W. R. DANFORTH & Co. *v.* G. B. WALKER.

### *Contract. Damages. Statute of Fraud.*

The defendant contracted with the plaintiffs for a quantity of potatoes to be delivered during the winter as called for by the defendant. Before they were all purchased by the plaintiffs the defendant notified them by letter not to purchase any more potatoes until they should hear from him. This order was never countermanded. *Held,* that this letter was not a rescinding of the contract, but a refusal to receive any more potatoes upon it than the plaintiffs had on hand, or had already purchased.

*Quere,* whether the contract was binding within the statute of frauds. If binding, the rule of damages for the breach on the part of the defendant as to the requisite quantity to be purchased by the plaintiffs when they received said letter would be the difference between the price the defendant had stipulated to pay, and what it would have cost the plaintiffs to procure and deliver the potatoes according to the contract.

Danforth et al. *v.* Walker.

In executory contracts, a party has the power to stop the performance on the other side, by an explicit order to that effect, by subjecting himself to such damages as will compensate the other party for being stopped in the performance on his part, at that point or stage in the execution of the contract.

ASSUMPSIT for breach of contract in not taking a quantity of potatoes agreeably to the contract between the plaintiffs and defendant. Plea, the general issue, and trial by jury, June Term, 1864, ALDIS, J., presiding.

A question raised on trial in respect to certain evidence was abandoned in the supreme court.

It appeared on trial that about the 18th day of January, 1859, the defendant made a verbal contract with the plaintiffs to purchase of them five car loads of potatoes, being fifteen hundred bushels, to be delivered on the cars at Stratford depot, N. H., as soon as the defendant should call for them, and as soon as he could get them away, sometime during the winter. Five or six hundred bushels were then in the store cellar of the plaintiffs and were examined and approved by the defendant when he made the contract. The rest the plaintiffs were to buy and have ready for the defendant as soon as he should call for them. The defendant was to take them as soon as he could. No memorandum of the contract in writing was made or signed by either party. It appeared that soon after the contract was made, or after the first car load was taken, potatoes fell in the market. On the 27th day of January, 1859, the defendant wrote to the plaintiffs directing them not to purchase any more potatoes till they should hear from him.

It also appeared that at the time the letter was received the plaintiffs had some seven hundred or eight hundred bushels of potatoes on hand, and had made contracts for the delivery of other potatoes. About the 16th of February following the defendant took four hundred bushels, and afterwards in May sent a check on Boston to pay for them at the contract price ; which were all the potatoes that were ever taken ; but at that time when the defendant took the four hundred bushels on the 16th or 17th of February, 1859, he took them upon the contract, and then and afterwards treated the contract as being in force as originally made, and at no time objected that potatoes had been bought after the letter of January 27th was re-

ceived, and in March wrote to the plaintiffs to sell the potatoes for him.

The defendant never gave to the plaintiffs any order or authority to purchase any more potatoes upon the contract after the letter of January 27th, nor did the plaintiffs agree to vary the contract and comply with the request in that letter.

The plaintiffs had not purchased enough potatoes to fill the contract when they received the letter of January 27th. The terms of the contract did not appear in the correspondence between the parties, subsequent to the making of the contract. The request of the defendant to the court and the charge in respect thereto are fully set forth in the opinion of the court. Verdict for the plaintiffs. To the refusal to charge as requested, and to the charge as given, the defendant excepted.

*A. J. Willard* and —— *Bartlett*, for the defendant, claimed that the defendant was entitled to have the charge as requested for the reason that when the letter was written there was no contract that the law recognized or upon which he was liable, and if the plaintiffs after that purchased any potatoes he was not bound to take them, unless by subsequent agreement, or unless he became bound by subsequent acts. *Ide & Smith* v. *Stanton*, 15 Vt. 685 ; Brown on Frauds, pp. 353 and 355.

*G. C. & G. W. Cahoon*, for the plaintiffs, maintained that the contract was rendered binding in law upon both parties by the acceptance of a part of the potatoes by the defendant. G. S. p. 453, § 2 ; *Green* v. *Merriam*, 28 Vt. 801 ; *Spencer* v. *Hale*, 30 Vt. 314 ; *Gorham* v. *Fisher & Roberts*, 30 Vt. 428 ; *Packer* v. *Steward*, 34 Vt. 127 ; and that the charge of the court was correct. *Blish et al.* v. *Granger*, 6 Vt. 340 ; *Hammond* v. *Buckmaster*, 22 Vt. 375 ; *Fletcher* v. *Cole*, 23 Vt. 114 ; *Paige* v. *Fullerton Woolen Co.*, 27 Vt. 485.

PECK, J. The exception to the decision of the court excluding certain evidence offered by the defendant, is not insisted on in argument.

The only question for this court to decide is as to the charge to the jury. The defendant requested the court to instruct the jury that the defendant was not liable for damage for any potatoes purchased by the plaintiff after the defendant's letter to the plaintiff of

January 27th, directing the plaintiffs to purchase no more. The court refused this, and instructed the jury that the defendant was liable in damage for all the potatoes purchased, and that although potatoes fell in the market, the plaintiffs had a right to go on and purchase potatoes to the full amount of the contract, and the defendant was bound to take them or pay the damage.

The contract being verbal, and no payment or delivery, or anything given in earnest to bind the bargain, and there being no memorandum of the contract in writing, it was within the statute of frauds, at the time it was made on the 18th of January. A subsequent written acknowledgement of the contract, signed by the party to be charged, is sufficient to take such contract out of the statute. But to have that effect, such written admission must contain substantially the terms of the contract. The defendant's letter of January 27th, together with the subsequent correspondence, is not a sufficient compliance with the statute, as the terms of the contract do not appear in any of the letters of the defendant. The delivery and acceptance of the four hundred bushels of potatoes in February, and the subsequent payment for the same in May following, was such part delivery and payment as answer the requirement of the statute. If nothing more appeared, it would be clear that the contract thereby became binding according to its terms, and to the extent of the original verbal agreement. But the defendant's letter of January 27th directing the plaintiffs not to buy any more, is equivalent to a refusal to accept any more potatoes on the contract than what the plaintiffs had on hand and had already purchased. It is also stated in the exceptions that the defendant never after the date of that letter authorized the plaintiffs to purchase any more. Upon these facts alone, it is questionable whether the delivery and payment above mentioned would give binding force to the contract beyond the quantity the plaintiffs had on hand when the contract was made, and what they had subsequently purchased up to the receipt of the letter of January 27th. But as it is stated : that the four hundred bushels delivered February 18th or 19th, were taken by the defendant upon the contract, and that he then and afterwards treated the contract as being in force as originally made, we are not prepared to say that the statute of frauds can avail the defendant.

Suppose the contract taken out of the statute of frauds, what are the rights of the parties?

The letter of January 27th directs the plaintiffs to purchase no more potatoes on the contract till they hear from him. This direction never was countermanded. This is equivalent to a refusal to accept any more potatoes than the plaintiffs had on hand and what they had already purchased; and the plaintiffs were bound so to regard it. At this time the plaintiffs had on hand seven hundred or eight hundred bushels, and had made contracts for the delivery of other potatoes; but it does not appear that these contracts, together with what the plaintiffs had, were sufficient to make up the whole amount of fifteen hundred bushels. On the contrary it appears by a schedule referred to showing the quantity and dates of the plaintiffs' purchases, that purchases made by the plaintiffs after the receipt of that letter, must necessarily be included to make up the fifteen hundred bushels. That letter cannot be treated as a rescinding of the contract. The plaintiffs having committed no breach of the contract to justify the defendant's refusal, might have rescinded the whole contract on the receipt of that letter, but they did not so elect, as they made a delivery under it in February after. This they had a right to do and still hold the defendant liable for breach of the contract. It is evident from the terms of the letter that the defendant did not intend to rescind the contract. It is but a refusal to receive any more potatoes upon the contract than the plaintiffs had on hand or had already purchased. As to what the plaintiffs had on hand, or had purchased when they received that letter, and which the defendant did not receive and pay for, no question is reserved. It is as to what the plaintiffs purchased afterwards to make up the fifteen hundred bushels, that the question arises. This refusal on the part of the defendant was a breach of the contract, as it prevented the plaintiffs from making further purchases, and delivering to the full extent of the fifteen hundred bushels the defendant had agreed to accept and pay for. The rule of damages for this breach, so far as it respects the requisite quantity then still to be purchased to fill the contract, would be the difference between the price the defendant had stipulated to pay, and what it would have cost the plaintiffs to procure and deliver the potatoes on the cars; in other words, what would make the plaintiffs

good for being thus far stopped at that point in the execution of the contract. The plaintiffs had no right to go on and make further purchases and incur expense, and throw the risk of the property upon the defendant, and thereby enhance the damages at the expense of the defendant, without any benefit to the plaintiffs. They had no right to increase the burden of the defendant without benefit to themselves. The damage a party is entitled to recover for the breach of contract by the other party, is what he *necessarily* suffers in consequence of it. While a contract is executory, a party has the power to stop the performance on the other side, by an explicit direction to that effect, by subjecting himself to such damages as will compensate the other party for being stopped in the performance on his part at that point or stage in the execution of the contract. The party thus forbidden cannot afterwards go on and thereby increase the damages, and then recover such increased damages of the other party. The jury under the charge must have given the plaintiffs such damages as they sustained by the non-acceptance *of*, and payment *for*, the whole fifteen hundred bushels of potatoes, except the four hundred bushels accepted and paid for, the plaintiffs being left with the potatoes on their hands. This was the right rule as to all the plaintiffs had on hand, or had purchased at the time they received the letter of January 27th, but not as to what they purchased afterwards. As to the latter quantity, The plaintiffs were entitled to recover what damage they would have sustained if they had not purchased them. It is urged that the case shows that when the defendant received the four hundred bushels, and afterwards, he treated the contract as in force. It is true that it was in force, as it had not been rescinded. It must be in force in order to entitle the plaintiffs to recover any damages. It was in force, but subject to the defendant's refusal to receive any potatoes upon it, purchased by the plaintiffs after the receipt of the letter of January 27th. That direction or refusal was never revoked or waived, as the exceptions show that the defendant never gave the plaintiffs any order or authority to purchase any more, after the letter of January 27th forbidding any further purchases. The plaintiffs' counsel rely on the fact that the defendant in the spring requested the plaintiffs to sell the potatoes, and that he never claimed that they were bought after

he directed the plaintiffs not to make any more purchases. But the case does not show that the defendant was informed that any purchases were made after he forbid any more purchases, and certainly he was not bound to presume it.

Judgment reversed and new trial granted.