MICHAEL COLLINS _vs._ A. G. DELAPORTE & another.

Suffolk.    March 6.— June 16, 1874.    WELLS & ENDICOTT, JJ., absent.

A. agreed to manufacture and deliver to B. a quantity of lumber at a certain time, and B. agreed to buy of A. the lumber at said time; each side of the executory contract was contained in a separate instrument, written at the same time, but each complete in itself and neither making any reference to the other.  _Held,_ that the two instruments were to be construed together as one contract containing mutual and dependent promises.

Where A. has agreed to deliver a certain quantity of lumber to B. at a time certain, and at said time tenders a less quantity than that agreed upon, and B. refuses absolutely to receive the lumber, not because the tender is not sufficient, but for other reasons, such tender is not equivalent to performance on the part of A., and the refusal will not excuse further performance of his contract on the part of A. so as to enable him to recover against B. on his contract to buy said lumber.

On a suit for breach of contract to buy lumber, admitting that the plaintiff was entitled to recover some damages, evidence that the lumber tendered was not of the quality agreed upon, is material and competent in reduction of damages.

CONTRACT, alleging an agreement on the part of the plaintiff to sell certain lumber to the defendants, and an agreement on their part to purchase the same, delivery of the lumber to the defendants and a refusal by them to receive the same.   There was also a count for goods sold and delivered.   The plaintiff subsequently filed an amended declaration alleging a contract as before, part performance on his part, and an abandonment of the contract by the defendants before the expiration of the time fixed by the contract for delivery.

At the trial in the Superior Court, before _Putnam,_ J., without a jury, judgment was entered for the plaintiff, and the following bill of exceptions was allowed :

" In 1872 the plaintiff entered into the following written contracts with the defendants, who were copartners, for the sale and purchase of lumber :

" ' Boston, April 4, 1872.   We, Delaporte & Blumberg, agree to take of M. Collins 8 thousand four inch, 20 thousand two inch, and the balance 1 inch chestnut at the price of twenty-seven dollars per thousand, delivered in Worcester on the cars.   It is understood that all the lumber be straight edge and sound in every way, and delivered about the end of August or September.   Delaporte & Blumberg.'

" ' Boston, April 4, 1872. I, M. Collins, agree to deliver to Delaporte & Blumberg, 8 thousand 4 inch, 20 thousand 2 inch, balance of 1 inch chestnut, all straight edge and sound every way, at the price of twenty-seven dollars per thousand, delivered in Worcester on the cars, about end of August or September. M. Collins.'

" One of the defendants went to see the lumber several days before said contracts were made, and said it would suit him, but it was not found that the number of feet which there was in the lot was agreed upon, except so far as said written contracts may show. A few days after the contracts were made, the plaintiff received the following letter from the defendants, containing further directions as to the sawing of the lumber : ' Mr. M. Collins : Dear Sir, — You will please saw the chestnut lumber as follows : 8,000 ft. 4 in. thick wide plank ; 20,000 ft. 2 in. thick ; 8,000 ft. $1\frac{1}{4}$ in. thick ; 10,000 ft. $1\frac{3}{4}$ in. thick ; and the balance 1 in. thick. Please give us the above widths instead of the order you had before.'

" The plaintiff proceeded to saw the lumber, and about the last of August or first of September, when he had sawed a part of it, came to Boston, called at the defendants' place of business, and saw Blumberg, one of the defendants, told him the lumber was all ready and showed him the following figures as what he had sawed, viz. : 1,088 feet of 1-inch, 7,846 feet of 2-inch, and 4,618 feet of 4-inch. Blumberg told him that they were then out of business and did not want the lumber, and should not take it. The plaintiff then told him that he should commence legal proceedings against him, and went home, and completed the sawing of the lumber as stated below, and subsequently sold fifty-eight hundred and twenty feet of it, at an average price of about $27 per thousand, and now has the balance of the lumber on hand, subject to the defendants' order. Prior to the sale of the fifty-eight hundred and twenty feet, he had no communication with the defendants, other than has been stated. The whole number of feet in the lot which was actually sawed was 27,914 feet ; 1,301 feet of 1-inch, 20,813 feet of 2-inch, and 5,800 of 4-inch.

" The defendants' counsel offered to show that of said 27,914 feet, not more than one half was sound, at the time of the interview in Boston, about September 1, and not more than one half

of it was sawed so as to be straight-edged, and that this fact was unknown to them at the time of the interview. This testimony was held to be immaterial, and was not admitted, as there was no claim that the lumber was rejected on that ground.

" Upon these facts the court found that the defendants had declined to receive the lumber without legal right, and the plaintiff might, without any further tender of the lumber after the sawing was completed, recover what was a fair value of the lumber he had left, after the sale of the 5,820 feet; and found that the amount of said lumber was 22,094 feet, a fair value of which was $27 per 1,000 feet, according to the contract price; and found accordingly for the plaintiff in the sum of $626.46, which includes interest."

The defendants excepted to the above rulings.

*A. Churchill*, for the defendants.

*L. M. Child*, for the plaintiff, cited *Newcomb* v. *Brackett*, 16 Mass. 161; *Parker* v. *Perkins*, 8 Cush. 318; *Danube & Black Sea Railway* v. *Xenos*, 11 C. B. (N. S.) 151; *Thayer* v. *Wadsworth*, 19 Pick. 349; *Gerrish* v. *Norris*, 9 Cush. 167; *Commonwealth* v. *Dracut*, 8 Gray, 455; *Cort* v. *Ambergate Railway*, 17 Q. B. 126.

COLT, J. The plaintiff, in his first count, claims the agreed price of a quantity of lumber, which he says he delivered to the defendants and they refused to take. He adds a second count upon an account annexed for the price of the same lumber, and an amended declaration contains a count upon a written contract, with an allegation which, favorably interpreted, states the plaintiff's offer to deliver the lumber contracted for and the refusal of the defendants to receive it.

It is not important to fix, if we could, the precise ground upon which the plaintiff at the trial sought to recover the contract price of all the lumber, because, upon any theory of his right, there must be a new trial.

The written contracts of the parties made at the same time are to be construed together as one contract containing mutual and dependent promises. Neither can enforce the agreement of the other without performance or readiness and an offer to perform on his part. The plaintiff, by his form of action, was required to prove full performance on his part. He sues, not for the breach

of an executory contract, but on a completed contract on his part to deliver, and on the part of the defendants to accept and pay for the lumber named. The agreement required him to manufacture and deliver the same in Worcester of specified dimensions and quality.

When the contract was made the lumber was in the log. The plaintiff sawed a part of it, and upon his offer to deliver that part, was told by the defendants that they had gone out of business and did not want and would not take the lumber. The plaintiff treated this as an absolute refusal and a renunciation of the contract, but went on and finished the sawing.

The ordinary rule of damages for refusal to perform an executory contract for the future delivery of property when the title, from the nature of the property or the terms of the contract, is not changed until delivery, is the difference between the price agreed to be paid and the value of it, and not the full price of the goods. A party to an executory contract may stop its performance by an explicit order, and will subject himself only to such damages as will compensate the other party for being deprived of its benefits. *Danforth* v. *Walker*, 37 Vt. 239. *Allen* v. *Jarvis*, 20 Conn. 38. *Laird* v. *Pim*, 7 M. & W. 474. *Cort* v. *Ambergate Railway*, 17 Q. B. 127. The plaintiff, upon the defendants' refusal, had the right then to treat the contract as broken. He seems to have proceeded to some extent on this ground, for no tender was afterwards made or notice given to the defendants of an intention on his part to complete it. If, upon the facts stated, he had the right to go on and finish sawing and sue for goods bargained and sold, of which we express no opinion, yet it is impossible in any aspect to support the exclusion of the evidence offered to show that the lumber sawed was of a quality inferior to the requirements of the contract. If not admissible upon the question of the defendants' ability and readiness to perform, it was material and competent as affecting the damages. The plaintiff was allowed to recover for unsound and defective lumber the price of sound lumber. This is equally wrong, vhether the plaintiff is entitled to recover as for goods sold and delivered, or is confined to the damages which necessarily followed the defendants' abandonment of the contract.

*Exceptions sustained.*