DANIEL J. DAVIS and THOMAS RANKIN, Co-Partners as DAVIS & RANKIN, Plaintiffs and Respondents, *v.* EMMA C. BRONSON and LORENZO N. BRONSON, Co-Partners as E. C. & L. N. BRONSON, Defendants; LORENZO N. BRONSON, Defendant and Appellant.

**Rescission of Contract—Action for Breach.**

Defendant having refused to perform a contract for the erection of a creamery by plaintiffs before they had entered upon the performance thereof, *held*, that an action to recover the contract price would not lie, although plaintiffs had, notwithstanding defendant's refusal to perform, completed the creamery according to contract. Plaintiffs had no right to go on with the contract under such circumstances, and recover the contract price; their only remedy being for damages for breach of the contract.

(Opinion filed Nov. 27, 1891.    Rehearing denied Jan. 2, 1892.)

*A*PPEAL from district court, La Moure county; Hon. W. S. LAUDER, Judge.

*George W. Newton,* for appellant.    *Moer & Harris,* for respondents.

Action to recover upon a contract of subscription to the capital stock in a creamery company. Judgment for plaintiffs. Defendant appeals. Reversed.

George W. Newton, for appellant:

It was predjudicial error to admit secondary evidence of the contract.    Anglo-American Packing Co. v. Connor, 31 Fed. Rep. 313;  Post v. School District, 26 N. W. Rep. 911;  Nelson v. Central Land Co., 29 N. W. Rep. 121;  *In re* Assignment of Gazett, 29 N. W. Rep. 347;  Sebree v. Dorr, 9 Wheat. 555;  Myers v. Bealer, 46 N. W. Rep. 479.  It was error for the court to refuse to submit the question of damages to the jury and to rule that the measure of damages was the subscription with legal interest from the time the creamery was completed.  Danforth v. Walker, 37 Vt. 239;  Derby v. Johnson, 21 Vt. 17;  Nye v. Taggart, 40 Vt. 295;  Clark v. Marsiglia, 1 Denio 317;  Spencer v. Halstead, 1 Denio 606;  Dillon v. Anderson, 43 N. Y. 237;  Moline Scale Co. v. Beed, 3 N. W. Rep. 96.

Moer & Harris, for respondents:

The points made in appellant's brief are all that will be considered by the respondents, as any error of the trial court not pointed out therein, is deemed to be waived. Brewing Co. v. Mielenz, 5 Dak. 136; Martz v. Putnam, 20 N. E. Rep. 270; Express Pub. Co. v. Aldine Press, 17 Amer. Rep. 608. The answer of appellant confesses and seeks to avoid the contract by new matter; no proof of the contract was necessary except as against the defendant, E. C. Bronson, and if the trial court erred as against her it was cured by the verdict of the jury and cannot be urged as a reason for a new trial. Gale v. Shillock, 29 N. W. Rep. 661; Derby v. Gallup, 5 Minn. 119; Gas Co. v. City of Davenport, 15 Iowa 6; Martin v. Sevearengen, 17 Iowa 346; Wollen v. Whitacre, 73 Ind. 198. The contract itself determines the amount appellant agreed to pay and controls in fixing the measure of damages. Davis & Rankin v. Belford, 37 N. W. Rep. 919; Gibbons v. Grinsel, 48 N. W. Rep. 255.

The opinion of the court was delivered by

CORLISS, C. J. The theory on which plaintiffs were allowed to recover against the appellant was that they had fully performed on their part all the conditions of an agreement with appellant and others to erect and equip a creamery at La Moure, in this state. We are compelled to reverse the judgment, because it appears that the plaintiffs were not justified in proceeding with the work under the contract for the purpose of charging the appellant with the full amount which he and his co-partner agreed to pay as their share of the contract price, as it is undisputed that the appellant broke the contract the day after it was made, and plaintiffs received notice of his determination not to carry out the agreement on his part on the second day after the contract was entered into. This was before they had taken any steps under it. Appellant could not, under the facts of this case, rescind the agreement without the assent of all parties thereto. Nor is it claimed that he did rescind it. The utmost that can be urged is that he arbitrarily refused to perform his part of the contract. This would subject him to an action for damages for breach of the contract.

But the plaintiffs could not, in the face of this refusal on his part to perform, undertake and carry to completion the work under the contract to be performed by them, and thereupon insist that they were entitled to recover from the appellant his share of the contract price. The authorities are very clear on this point. Bishop Cont. §§ 837-841; Danforth v. Walker, 37 Vt. 239, 40 Vt. 257; Moline Co. v. Beed, 52 Iowa 307, 3 N. W. Rep. 96; City of Nebraska v. Coke Co., 9 Neb. 339, 2 N. W. Rep. 870; Clark v. Marsiglia, 1 Denio 317; Butler v. Butler, 77 N. Y. 472. No damages for breach of the contract by the appellant were proved, nor was there any allegation of such damages. The action was upon the contract to recover the contract price, and not for damages for breach of it. For this vital error the judgment is reversed, and a new trial ordered. All concur.

## ON REHEARING.

It is urged that Kadish v. Young, 108 Ill. 170, and Roebling's Sons' Co. v. Fence Co., 22 N. E. Rep. 518, 130 Ill. 660, are conclusive in favor of the doctrine that one party to a contract cannot, by notice of his determination not to perform, given before the time to begin performance has arrived, create such a breach of the contract as will compel the other party, who does not assent to the breach, to treat the contract as then broken, and limit him to the recovery of such damages as are proper on the basis that the contract is then broken. These cases do sustain such a doctrine, and it is undoubtedly an elementary rule of law. The full scope of these and kindred decisions is that the person who has not broken his part of the compact may, at his option, extend to the person who has signified his purpose to violate the agreement, an opportunity for repentance, measured by the time to elapse between the refusal to perform and the date when performance is to commence. He may, and some cases hold that he must, treat the contract as subsisting, not for the purpose of performing it in the face of a persistent, unchangeable refusal of the other party to carry out, and then of recovering the full contract price, but for the purpose of insisting that such party shall, when the time of per-

formance arrives, finally determine whether he will stand by his agreement or by his former repudiation thereof.. All that these cases decide is that the repudiating party may not force the other party to sue for a breach of the contract before the time of performance arrives, and therefore have his damages fixed by the condition of affairs at the time of the premature repudiation of the contract, as though such repudiation had been made on the day of the performance. But when the time to perform arrives, then, if the refusal to carry out the agreement is not withdrawn, there is no principle on which the other party to the contract can perform and sue for the contract price any more than in the case of a refusal made for the first time on the very day of performance. The party keeping the contract need not mitigate the damages by treating as final a premature repudiation thereof, but this is far from establishing the proposition that he may increase the amount to be paid by the other party by completing the contract after notice of repudiation, made on the day of performance, or made before that day, and never withdrawn, but, on the contrary, constantly insisted upon down to and including that day. In Kadish v. Young, 108 Ill. 170-185, the soundness of the cases cited to sustain our conclusion is expressly recognized. After citing some of them, the court says: "It will be observed in each of these cases the time for the performance of the contract had arrived, and its performance had been entered upon. In neither of them was the defendant at liberty, after notifying the plaintiff not to proceed further in the performance of the contract, to demand that he should proceed to perform it. As it was said in Frost v. Knight, L. R. 7 Exch. 111, the defendant was, in case of notice, not to perform a contract the time of performance of which is to commence in the future. In these cases there is no time or opportunity for repentance or change of mind; in those there was." The court quote with approval the language used in Danforth v. Walker, 37 Vt. 244, where the court say: "While a contract is executory, a party has the power to stop performance on the other side by an explicit direction to that effect by subjecting himself to such damages as will compensate the other party for being stopped in the performance on

his part at that hour or stage in the execution of the contract. The party thus forbidden cannot afterwards go on, and thereby increase the damages, and then recover such damages of the other party." It is to be noted that in the case at bar the refusal to perform was not premature. The contract specified no time when performance thereof should be entered upon by the plaintiffs, but it provided that the building, with all its equipments, must be finished within 100 days after the amount had been subscribed. The plaintiffs might, under these provisions, have entered upon the performance of their part of the agreement at once. It was the right of the appellant to notify them immediately of his determination not to carry out his part of the contract, in order to save himself from the increased damage which a partial performance before notice might cause. Daniels v. Newton, 114 Mass. 533, is confidently relied on by respondents. The language used in this and similar cases must be construed in the light of the facts. In the case in 114 Mass. an action for damages was brought before the defendant was under any obligation to perform the contract, the action being based upon defendant's premature refusal to carry out the contract. The decision merely was that the action was prematurely brought; that the defendent might before the time for performance arrived, change his mind, and insist on a performance of the contract. The case does not decide that when one party to a contract may, under its terms, enter upon the performance of it, the other party may not, subject always to liability for damages, prevent the completion of the contract, or prevent the commencement of work thereunder, for the purpose of subjecting him to liability for the full contract price. If respondents' contention is sound, it was beyond the power of the appellant ever to escape the payment of the contract price, although he had been the only party to the contract on his side. He could not break it so as to subject himself to damages and prevent the respondents from completing the creamery and holding him for the contract price until the same had been fully completed and ready for delivery, for only then, it is said, was the appellant bound to do any act on his part under the contract; and when the creamery was finished it was claimed that appellant would not

escape payment of the price, because it is said the title instantly vested in him and his associates in the contract, not only without his assent, but against his will. What, then, becomes of the doctrine that one party to a contract cannot, except in special cases, enforce specific performance thereof, but must make his claim for damages? And what becomes of the authorities recognized as sound by respondents' own cases, which hold that the party who has something to do must not, after notice of refusal from the other party, go on with the work, and thus increase the liability of such other party to him? Respondents seem to urge that at no time is notice of refusal to perform efficacious to prevent performance on the other side except at the moment that the party breaking the compact is bound to perform. Their own cases are against this position. Said the court in Daniels v. Newton, 114 Mass. 533: "The plantiff's rights are invaded by repudiation of the contract only when it produces the effect of non-performance on his part or prevents him from entering upon or completing performance on his part, at a time when, and in a manner in which he is entitled to perform it or have it performed." It may well be true that where the performance by the party notified not to perform consists of a single act—as the tender of a deed—notice before the time for such delivery will not warrant an action for damages; but where the final act of tender is the culmination of other acts which in the nature of the case, must precede it—as where the party is to manufacture or build the thing to be delivered—then it is quite clear that the conduct which before the time of delivery prevents the taking of the preliminary steps—the manufacture of the article or the erection of the building—as effectually prevents, before the day of tender arrives, the possibility of delivery, as though that day in fact had arrived, and a tender of the thing had been rejected. In such a case the contract is as effectually broken by the notice not to go on with it, given before the day of delivery arrives—the person who is to do the work having then the right to enter upon the performance of the same—as though the notice had been given on the very day of delivery. The question in all cases is whether one party has prevented performance by the other party at the time when

performance by him is due.     This can be done as well by pre-
venting the taking of those preliminary steps without which
the final step cannot be taken as by preventing the taking of
such final step itself.    These preliminary steps must often pre-
cede by many days the time of performance, and it therefore
must follow that notice of refusal to carry out the contract in
such a case given before the time of performance, will oper-
ate as a breach of the contract in case the time has arrived at
which the person willing to keep the contract may enter upon
the work under the contract.

  Counsel refer to the statute touching rescission of contracts,
and insist that the appellant has not shown that the case falls
within any of the provisions of such statute. In this he is correct.
There was no recission of the contract.   A lawful recission of
an agreement puts an end to it for all purposes, not only to pre-
clude the recovery of the contract price, but also to prevent the
recovery of damages for breach of the contract. This is the com-
mon law rule, and our statute merely echoes this rule. "A con-
tract is extinguished by recission." § 3588, Comp. Laws. Coun-
sel seem to be unable to make the distinction between the right
of one party to refuse to perform his agreement, always subject
to his liability for damages, and the recission or utter destruc-
tion of a contract for all purposes, resulting from mutual con-
sent, or from the action of one party alone, where by reason of
fraud, duress or other legal ground for recission, the right is
vested in him to elect to abrogate the contract without liability
thereunder for damages or for the contract price.    The burden
of the argument seems to be that no person can break a con-
tract unless he can and does rescind it.   The result is that no
compact can ever be violated so as to subject the person at-
tempting to infringe it to damages, for there is no breach on
this theory, except in cases where there can be no breach, be-
cause by recission the contract is annihilated so effectually that
in contemplation of law it has never had any existence, even
for the purpose of being broken. The two lines of thought run
in diverse directions.    One starts with the fact that one party
has refused to perform, and leads to the conclusion that the
other party must do nothing from the moment he is aware of

such refusal to increase the liability of the one breaking the agreement, and must, therefore, so long as such refusal is not recalled, abstain from going on with the work he has to perform under the contract; the other finds a mutual abandonment of the compact, or an abandonment by one who, under the law, has a legal right to abandon it, and leads inevitably to the conclusion that there is no contract to be performed by any one, and hence that no damages for breach thereof can be incurred, and that no liability for the contract price can possibly exist. That the Massachusetts supreme court, in Daniels v. Newton, did not intend to decide contrary to our views is apparent from the fact that the same court, only six months later, without overruling Daniels v. Newton, or even regarding it as at all bearing on the question, expressly recognized and enunciated the doctrine on which we rest our decision. In Collins v. Delaporte, 115 Mass. 159, that court says: "A party to an executory contract may stop its performance by an explicit order, and will subject himself only to such damages as will compensate the other party for being deprived of its benefits."

It is urged that the plaintiffs were bound to build the creamery despite the defendant's refusal to go on with the contract, because there were other parties to the contract who could have held the plaintiffs liable in damages had they, acting upon defendant's breach of the agreement, refrained from constructing the building. We see no principle on which the other parties could have recovered from the plaintiffs damages under these circumstances. Their agreement was with all the defendants, including this appellant. They did not agree to build a creamery for the other defendants, and take their responsibility for the contract price. It furnishes an ample justification for a failure to go on with the work that one of the contracting parties—perhaps the only responsible one—has by a breach of the contract made it impossible for the plaintiffs to complete the building, and charge such party with the contract price. The contract was entire, and the plaintiffs could not be compelled to perform it as to and for only a portion of the contracting parties. It is illogical to assert that the plaintiffs would have been liable to the other parties had they, acting upon the appellant's

breach, refrained from carrying out the agreement on their part. On what principle does this assertion stand? The general rule is, as we have already stated, that the contracting party who has certain things to do under his contract, has no right to proceed with the execution of the contract, and charge the other party with the expense thereof, after he has been notified that such other party will not stand by his compact. There is no reason why the rule should not apply in the case of a refusal to perform, emanating from one or two. The parties on the same side of a contract are bound together in interest, and there is no reason why all of the rest should not be responsible for the default of any one. The nature of the engagement is that the contracting party will continue bound to perform only on condition that they all continue faithful to their compact, and not on condition of only a portion standing by their engagement. Whether defendant may be liable to his co-contractors for breach of an implied agreement to keep his promise we need not now decide.

It is urged that the decision in Buchel v. Lott (Tex. App.), 15 S. W. Rep. 413, is in point. We cannot see the faintest resemblance between that case and the one at bar. The appellant, with others, had signed a subscription list, aggregating $23,000. The amount subscribed was to be a bonus to be paid on the construction of a line of railway within a specified time. The railroad was so constructed, and in an action against the appellant to recover the amount of his subscription, the court held him liable on the theory that the consideration for his promise was executed; the promise of each subscriber being such a consideration for the promise of the others as rendered absolute the obligation to pay the amount of the subscription, and that, therefore, appellant could not withdraw his subscription. In the class of cases of which this is one the doctrine is recognized that the liability is as absolute as though each subscriber had received as a loan the amount which he agrees to pay as a subscription. There is an obligation to pay the money, which is indefeasible by any act of the subscriber. Said the court in this case: " He became bound upon said contract the moment he signed it for the amount subscribed by him, sub-

ject only to the condition that the railway should not be constructed according to the terms of the contract." This doctrine is by no means recognized universally, and it is not too much to say that the weight of reason and authority is against it. Baptist Church v. Cornell, 117 N. Y. 601, 23 N. E. Rep. 177; Presbyterian Church v. Cooper, 112 N. Y. 517, 20 N. E. Rep. 352; Methodist Church v. Kendall, 121 Mass. 528; University v. Livingston, 57 Iowa 307, 10 N. W. Rep. 738. But this question we are not called upon here to decide, nor is it at all material, for, assuming the decision to be sound, it makes nothing against our position, for here there was a general agreement on the part of all to pay $5,000 for the creamery. Each was bound for the full amount. The plaintiffs agreed to build the creamery for $5,000, and the engagement of the subscribers is to pay, not the amount set opposite their several names, but the sum of $5,000 generally. "We, the subscribers hereto, parties of the second part, agree to pay the above amount for said creamery when completed," etc. The consideration for this joint promise to pay $5,000 was the erection of this creamery. The consideration therefor was not executed, but executory. There did not arise upon the signing of the contract by the appellant an absolute obligation to pay $5,000 or any portion of it, the same as though he had actually received the consideration for the promise—the theory upon which subscribers are held liable in the class of cases to which Buchel v. Lott belongs—but he became bound to stand by his agreement, or, in default thereof, to pay such damages as a breach of his contract would cause. The petition for rehearing is denied. All concur.

BARTHOLOMEW, J., having been of counsel, did not sit on the hearing of the above case, nor take any part in the decision; Judge TEMPLETON, of the first judicial district sitting by request.