(Opinion published 54 N. W. Rep. 486.)

---

## D. F. GIBBONS *vs.* OLE O. BENTE.

Argued by appellant, submitted on briefs by respondent, Jan. 13, 1892. Decided Feb. 23, 1892.

**Right to Arrest Performance of Executory Contract—Damages.**

Where a contract is executory, one party has the power to stop performance on the other side by an explicit direction to that effect, subjecting himself to such damages as will compensate the other party for being stopped in the performance of his part at that stage in the execution of the compact. The party thus forbidden to proceed cannot afterwards go on, complete the contract, and recover the contract price, as such; his only remedy being for damages for breach of contract.

ON REHEARING.

Argued Nov. 1, 1892. Decided Dec. 8, 1892.

### Contract Construed—The Liability Several.

On reargument. The contract referred to in the original opinion construed, and *held* to create a several liability on the part of each subscriber to the amount of his subscription only.

### Same—In other Respects the Contract was Joint.

*Held*, further, that in other respects the interests of the subscribers were joint, and that all must unite in order to repudiate and renounce the contract.

### Question Erroneously Taken from the Jury.

*Held*, also, that the trial court erred in not submitting to the jury the question as to fraudulent representation and concealment made in order to obtain the defendant's signature to the instrument.

Appeal by defendant, Ole O. Bente, from an order of the District Court of Stearns County, *Searle*, J., made August 24, 1891, denying a new trial.

The plaintiff, D. F. Gibbons, brought this action to recover of defendant $100 and interest. The complaint stated that D. J. Davis and Thomas Rankin on September 17, 1890, at Brooten, Minnesota, agreed to build at that place in ninety days or thereabout a combined creamery and cheese factory for defendant and others, and that in consideration thereof defendant agreed to pay them $100, one-third in cash, one-third in sixty days and the residue in four months after its completion. That Davis & Rankin performed on their part prior to November 1, 1890, and assigned their claim to plaintiff, and that defendant failed to pay the $100, or any of it. A copy of the contract was attached to the complaint.

The defendant answered that he was a Norwegian, unable to read English; that plaintiff, as agent of Davis & Rankin, procured his subscription to the contract by representing that it was only an agreement to take $100 stock in a corporation to be organized, and that the stockholders would determine at a meeting whether they would build a creamery; that he attended the meeting of the subscribers, and it was there resolved and decided by a majority, not to incorporate or build a creamery; that plaintiff was present and

had notice of the decision; that defendant then and there refused to perform the contract on his part and notified plaintiff. The defendant also answered that he was not severally liable upon the contract, and that the other subscribers were necessary parties.

The action was tried June 22, 1891. The court instructed the jury to return a verdict for plaintiff for $103.95. Defendant excepted and moved for a new trial, but was refused. The following is a copy of the contract, viz.:

"We, Davis & Rankin, party of the first part, agree with the undersigned subscribers hereto, party of the second part, to build, erect, complete and equip for said party of the second part, a combined butter and cheese factory, at or near Brooten, Stearns county, Minn., as follows, to wit, (describing it and the machinery.)

"The parties of the second part hereby agree to furnish suitable lands for said buildings, together with sufficient water on said lot for the use of the business, and they shall be credited therefor, as a payment on this contract, the sum of $200; and it is further understood that in case the said second party shall fail to furnish said land and water within ten days after the execution of this contract, then the said Davis & Rankin at their option may furnish said land and water.

"Davis & Rankin further agree to provide and keep hired, at the expense of the stockholders, an experienced butter and cheese maker for one year, if desired.

"Said Davis & Rankin agree to erect said butter and cheese factory as set forth by the above specifications for $6,500, payable in cash, one-third when completed and one-third in sixty days, and one-third in four months after completion.

"We, the subscribers hereto, agree to pay the above amount for said butter and cheese factory, when completed. Said building to be completed within ninety days or thereabout after the above amount ($6,500) is subscribed. All subscriptions to this contract to bear interest at the rate of eight per cent. per annum from date of completion until paid.

"As soon as the above amount of $6,500 is subscribed, or in a reasonable time thereafter, the said subscribers agree to incorporate

under the laws of the state, as therein provided, fixing the aggregate amount of stock at not less than $6,500, to be divided into shares of $100 each.    Said share or shares as above stated to be issued to the subscribers hereto in proportion to their paid up interest herein.

"It is further distinctly understood by and between the parties hereto that if the subscriptions hereto shall amount to more than $6,500 and less than $7,000 then the foregoing agreement, designated as 'Contract B,' shall constitute the agreement between the parties.

. "For the faithful and full performance of our respective parts of the above contract, we bind ourselves, our heirs, executors, administrators and assigns.    Executed and dated this 17th day of Sept., 1890."

*T. T. Ofsthun, D. C. Van Camp* and *Jenkins & Treat,* for appellant.

The defendant alleged in abatement of the action that if liable at all, he is only liable jointly with other subscribers.    The evidence in support of this issue is the contract itself, which says: "We, the subscribers hereto, agree to pay the above amount ($6,500) for said butter and cheese factory when completed."

There was evidence sufficient to go the jury on the question of fraud in obtaining defendant's signature to the contract, and the court erred in taking this question from the jury and directing a verdict for plaintiff.

At the meeting at Brooten, plaintiff being present and participating, it was determined not to incorporate and not to have the creamery built.    This was an abandonment of the contract on the part of the farmers, and thereafter Davis & Rankin had no right to proceed with the construction of the creamery and recover the contract price. They could only recover such damages as occurred to them by reason of this breach of the contract; which would be their net profits on the construction of the creamery and not the contract price. *Davis* v. *Bronson,* 2 N. Dak. 300.

*D. Wilcox* and *Taylor, Calhoun & Rhodes,* for respondent.

There was no evidence tending to prove fraud on the part of plaintiff or of Davis & Rankin, and for that reason the court directed a

verdict for plaintiff. If there was any' testimony reasonably tending to prove the fraud alleged in obtaining defendant's name upon this contract such instruction was erroneous. We insist that the testimony nowhere shows a statement made by plaintiff as to the contract signed by defendant that was not in all respects true. Davis & Rankin had contracted with all the subscribers, sixty-seven in number, to build the creamery. Less than a majority voted to rescind. Davis & Rankin were bound to perform their contract. They had no option. A part of the subscribers could not release them. The meeting at Brooten did not release any one from his contract.

Plaintiff insists that the contract is several. The fact that each subscriber states after his name the amount of his subscription, and that after incorporation he is to have stock in proportion to the amount of his subscription, shows that the interest of each subscriber is to be in severalty; and it follows that the intention was that his liability should be several and not joint. When the object to be accomplished and the means taken to accomplish it, are considered in connection with surrounding facts, there can be no doubt that no one intended that one person should be liable for the whole amount. A contract for this same purpose, in identically this same form, was considered and construed by the Supreme Court of Wisconsin in *Gibbons* v̇. *Grinsel*, 79 Wis. 365; *Davis* v. *Belford*, 70 Mich. 120; *Frost* v. *Williams*, 1 S. Dak. —; *Landwerlen* v. *Wheeler*, 106 Ind. 523.

It is claimed that one party to a contract can repudiate it and thereby prevent performance. But in the case at bar the party supposed to have repudiated the contract, consisted of sixty-seven persons, and only twenty-seven or twenty-eight united in the repudiation. Defendant claims that less than a majority of the whole can repudiate the contract, and as a necessary consequence that their action can create a liability for damages as against the whole.

When several are joint parties, the only theory on which the act of one can be held to bind the others is that of agency. That by associating themselves together each clothes each of the others with the power to act for him and bind him by such acts. The case of *Davis* v. *Bronson*, 2 N. Dak. 300, assumes that any one can

act for the whole to the extent of repudiating the contract, and that all are bound by and responsible for such repudiation.

No such authority or agency exists, or can be implied from the joint contract, as will authorize one to act for and bind the others, so as to alter, renew or extend their liability. Where the relation is merely that of joint debtor, neither is the agent of the other to make a new contract with the creditor. *Willoughby* v. *Irish*, 35 Minn. 63; *Van Keuren* v. *Parmelee*, 2 N. Y. 523; *Bell* v. *Morrison*, 1 Pet. 351; *Thompson* v. *Bowman*, 6 Wall. 316; *Lewis* v. *Woodworth*, 2 N. Y. 512; *Shoemaker* v. *Benedict*, 11 N. Y. 176; *Wallis* v. *Randall*, 81 N. Y. 164; *Thompson* v. *Richards*, 14 Mich. 172.

Each of the subscribers has contracted with the others to accomplish the common purpose, and can compel the performance of the contract to the extent necessary to protect himself from any other or different liability than that which he voluntarily assumed. *Zabriskie* v. *Hackensack & N. Y. R. Co.*, 18 N. J Eq. 184; *Erwin* v. *Oregon Ry. & Nav. Co.*, 27 Fed. Rep. 625; *Brewer* v. *Boston Theatre*, 104 Mass. 378; *Clearwater* v. *Meredith*, 1 Wall. 25; *Henry* v. *Dietrich*, 84 Pa. St. 286.

COLLINS, J. The contract out of which this litigation arises was an executory one, entered into by Davis & Rankin, of the first part, (by plaintiff, who was then their agent, and has succeeded to their rights under the contract by assignment,) and defendant, with some sixty other persons, as parties of the second part. In it the parties of the first part agreed to erect and complete a butter and cheese factory for those of the second part within ninety days after the amount of the contract price had been obtained by subscription,—the scheme being to secure subscribers to the stock of a corporation in shares of $100 each; and the parties of the second part agreed to pay the contract price in three installments, commencing upon the completion. The defendant subscribed for one share, and is sued for the sum of $100. Without stopping to consider other points referred to by counsel for appellant, we proceed to an examination of one which goes directly to respondent's right to maintain an action for any part of the contract price, as such, although the factory has been completed

in accordance with the terms of the contract. It was undisputed that soon after it was entered into, but before Davis & Rankin had commenced to perform, a meeting of those who had signed as parties of the second part was held. The plaintiff attended and participated. At this meeting a large majority of those present—defendant being of the number—voted and determined that they would go no further in the enterprise, and that the factory should not be built.

The plaintiff was then and there notified not to erect the factory, and to proceed no further under the contract. He responded in somewhat vigorous language, and declared that the factory should be erected inside of two weeks. As agent of Davis & Rankin, he then proceeded to erect and equip the plant. Defendant and others refused to accept it when completed, or to pay. The question is as to the power of the parties of the second part to repudiate and arbitrarily break their contract, by refusing to perform, and by renouncing all liability under it, and thereby prevent Davis & Rankin from recovering the full contract price, should they disregard the breach and fully perform on their part. There seems to be no room for doubt upon this subject.

While a contract is executory a party has the power to stop performance on the other side by an explicit direction to that effect, subjecting himself to such damages as will compensate the other party for being stopped in the performance on his part at that stage in the execution of the contract. The party thus forbidden cannot afterwards go on, and thereby increase the damages, and then recover such damages of the other party. *Danforth* v. *Walker*, 37 Vt. 239; *Clark* v. *Marsiglia*, 1 Denio, 317; *Butler* v. *Butler*, 77 N. Y. 472; *Collins* v. *Delaporte*, 115 Mass. 159.

The question is very fully considered in the recent case of *Davis* v. *Bronson*, 2 N. Dak. 300, (50 N. W. Rep. 836,) in which cases other than those above noted are referred to.

The legal right, on general principles, of either party, to violate, abandon, or renounce his contract, on the usual terms of compensation to the other for the damages which the law recognizes and allows,—subject to the jurisdiction of equity to decree specific performance in proper cases,—is universally recognized and acted upon.

Among the many authorities which might be cited on this, see Bish. Cont. § 837; Leake, Cont. 868, 1044; 1 Suth. Dam. 113; 2 Suth. Dam. 193, 526; *Hinckley* v. *Pittsburgh Bessemer Steel Co.*, 121 U. S. 264; *American Life Insurance Co.* v. *McAden*, 109 Pa. St. 399, (1 Atl. Rep. 256;) *Frost* v. *Knight*, L. R. 7 Exch. 112; *Roper* v. *Johnson*, L. R. 8 C. P. 167; *Laird* v. *Pim*, 7 Mees. & W. 474; *Hochster* v. *De la Tour*, 2 El. & Bl. 678.

From an examination of the adjudged cases just cited, it will be seen that ordinarily the party who is willing to abide by an executory contract may treat it as subsisting up to the time when performance should commence, for the purpose of insisting that the other party, who has previously repudiated it, shall then and finally determine whether he will comply with its terms, or persist in his resolution not to perform upon his part. But the party who has not broken his compact is not allowed to treat it as in force, for the purpose of performing in direct opposition to the refusal of the other to abide by its terms, and then enforce the payment of the contract price. One reason for this is found in the general rule that a person who has been injured by a breach of contract must put forth reasonable exertion to render the injury as light as possible. He cannot negligently or willfully allow the damages to be unnecessarily enhanced; or, if he does, the increased loss falls upon him.

Order reversed.

GILFILLAN, C. J., absent, (sick,) took no part.

### ON REHEARING.

COLLINS, J. On the presentation of this case at the October term, 1891, appellant's counsel filed their brief, and made a short oral argument. Counsel for respondent were not present, submitting wholly on brief. After its service on the latter, there had been interpolated in appellant's brief the point that as he, with some twenty-eight other subscribers, renounced the contract before Davis & Rankin had commenced the erection of the factory building, their assignee could not recover upon the contract, but was relegated to an action for damages, caused by the breach thereof. The decision

which followed was squarely placed upon that ground. Later, by petition for reargument, it appeared that through an oversight the attention of respondent's counsel had not been called to the point, or to the fact that it had been injected into appellant's brief, and, as a consequence, no reference had been made to it by them. For this reason a reargument was ordered.

In the original opinion the true character of the contract signed by defendant and sixty-seven other persons as the parties of the second part was not considered. The respondent's counsel, in order to maintain their action, had to contend that it was several, to the extent of the obligation to pay, at least, and, without deciding the point, we assumed that they were right, although it was strenuously urged by counsel for appellant that his liability was joint, and hence an action against a single subscriber could not be maintained. We are now obliged to consider and determine the real nature of the contract, in order to dispose of a very troublesome question arising on reargument, namely, the right of one or more of those who, as subscribers, became the parties of the second part, to repudiate and renounce the contract, without regard to the wishes or acts of his or their associates.

Contracts, in substance the same as the one before us, were construed in *Davis & Rankin B. & Mfg. Co.* v. *Barber,* 51 Fed. Rep. 148; *Davis* v. *Belford,* 70 Mich. 120, (37 N. W. Rep. 919;) *Gibbons* v. *Grinsel,* 79 Wis. 365, (48 N. W. Rep. 255;) and *Frost* v. *Williams,* 1 S. Dak. ——, (50 N. W. Rep. 964,)—as creating a several liability on the part of each subscriber to the amount set down by him opposite his name, on which he might be sued severally; while in *Davis* v. *Shafer,* 50 Fed. Rep. 764, an opposite conclusion was reached, it being held that the subscribers to such an agreement became *jointly* and severally obligated to pay the entire amount of the subscriptions. In none of these cases was the question now before us involved, but in *Davis* v. *Bronson,* 2 N. Dak. 300, (50 N. W. Rep. 836,) cited in our former opinion, it was raised on reargument, and disposed of adversely to the respondent's views; but of that hereafter. Nor was there anything to suggest in either of the cases first referred to, wherein the obligation to pay was declared several, and not joint,

that the contract of the subscribers might be pronounced several in one particular,—for instance, as to the liability to pay,—and joint in all other features.

After a careful consideration of the authorities heretofore cited, and others which have a bearing, we are convinced that the better reasoning and the correct conclusion is with those in which it has been held that the contract imposed nothing more than a several liability upon the subscribers, each agreeing to pay the amount of his subscription and nothing more. This has been the practical construction of the contract by the party of the first part, and, we think, the only one which can be sustained under the ordinary rules for construing written instruments. Having determined that the obligation to pay was several, each subscriber being responsible to the amount of his subscription only, we reach the principal question before mentioned, which is, putting it in another form, can each of the subscribers, after all of the subscriptions have been obtained, but the contract itself is executory, be regarded as a separate contractor, possessing the power to repudiate and renounce for himself alone and independently of the other signers, or must the sixty-eight persons who have executed it as the party of the second part be treated as a single person, and required to act as a unit, if any or all desire to repudiate and renounce? The question is an exceedingly difficult one to answer satisfactorily. It must be conceded that, if one or any number less than the entire body of the subscribers may repudiate and renounce, the parties of the first part must consequently be absolved from their obligation to construct and equip the factory; they must necessarily be released from a duty to proceed, and also from all liability arising out of nonperformance to those who may be styled the "persistent subscribers." It could not be held that the parties of the first part are under an obligation to the subscribers last mentioned to complete the work, for, if they were, it would be incumbent upon them to fulfill a contract without the right to recover the contract price, and with full knowledge that from the repudiating and defaulting subscribers they could only recover, as for a breach of the contract, the damages, to be measured as of the time of the repudiation or renouncement. It can then be safely

asserted that if one, or any number less than all, of the subscribers may lawfully repudiate or renounce the contract, each for himself, no duty to proceed and no liability in case of a failure so to do rests upon the other parties. In *Davis* v. *Bronson, supra,* this view was taken, undoubtedly, and it would seem also that the contract was therein regarded as joint in all respects; and because the persistent subscribers had no cause of action for a breach of contract, and because all were regarded as responsible in damages to the parties of the first part for the default or breach of one, it was held that one could absolutely terminate the contract as to all by repudiation or renouncement. We might be prepared to coincide in the view that no action for damages would lie against the other parties if one of these subscribers could thus end the contract, but we cannot concur in the statement that each and all of the subscribers are liable, as for breach of the contract, if one chooses to repudiate or renounce. Upon principle, we do not think this statement can be sustained, even if we had followed *Davis* v. *Shafer, supra,* and held the contract joint and several in all respects. The logic of the reasoning in *Davis* v. *Bronson* is that any one of the subscribers to a contract of this kind can act for all to the extent of repudiating it, and that all are bound by and responsible for his acts. Any one is the agent of all, and by associating themselves together as promoters of the enterprise their interest is such that each is clothed with authority to act for and bind each of the others. Every subscriber has become the agent of his associates, for it is only upon the principle of agency that even joint obligors or parties can be held to have authority to act for or bind each other. If this be the law, and repudiation by one repudiates for all, because of the joint interest which exists between the parties, we fail to see why this joint interest is not sufficient to permit one to change and alter the contract in behalf of all, or to rescind it altogether. Of course, such a position would be wholly untenable.

If this was a several contract in all respects, one of the subscribers, as an independent contractor, could not be denied a right to repudiate it for himself, leaving the parties of the first part under obligations to fulfill as to the balance of the signers. This duty to

fulfill would continue so long as one of the subscribers remained faithful. From him the amount of his subscription could be collected, and from the defaulters damages, to be measured, as before stated, as of the day of the repudiation. Nothing could be more unjust, and the contract ought not to be so construed, unless it be demanded by the language thereof. There is nothing in the fact that the obligation to pay has been made several which indicates that in all other particulars the obligation of each subscriber is separate and distinct; nor can we gather from any part of the contract that there was any intent, except in the matter of payment, to make the obligation a several one. Certainly the subscribers did not so understand it, for the repudiation and renouncement relied upon by defendant were by means of a motion made and carried at a meeting held by them, a majority of all being present, but less than a majority of all voting in favor of the motion. We are therefore of the opinion that, while the obligation to pay was several and independent, the subscribers jointly shared the burden, and were united in interest in all other respects. Taken as a whole, the instrument was of a very peculiar character, and evidently, until a stock company was formed, (and it was agreed that this should be done when the full amount of the subscriptions had been obtained,) it was not intended that even a majority should govern or control. It follows that unanimous consent would have to be secured before the contract could be repudiated and renounced. But, if the obligation to pay had been joint, instead of several, thus making the contract joint in all particulars, it is difficult to see by what authority one or more of the subscribers could repudiate for all; the inevitable result being to change the relations existing between the contracting parties. There is nothing in the relation of joint debtors from which authority or agency to alter or extend a liability can be inferred. With simple joint contractors, neither is the agent of the other, and their individual liability is not to be extended beyond their own acts and contracts. Nor can an agency or authority be inferred because of the joint relations or united interests assumed by the signers concerning other matters of the contract; for instance, the agreement to form a stock company for the manage-

ment of the factory when the subscriptions should be complete. The conclusion heretofore reached in respect to the effect of the action at the meeting was erroneous, but this fact will not change the result. A new trial must be had, because the court below failed to submit to the jury the question presented by the testimony as to fraudulent representation and concealment, made when the defendant signed the contract, by plaintiff, who was then acting as agent for Davis & Rankin.

The defendant was a foreigner, and unable to read the English language. The plaintiff went to his house with the contract fully completed, and already signed by others. It was in triplicate form, containing conditions that have caused the courts considerable trouble, as witness the cases heretofore referred to in which these contracts have demanded interpretation. It is conceded that defendant could not and did not read the skillfully drawn document, nor was it read to him. The plaintiff pretended to explain its terms, and the testimony tends to show that material facts were misrepresented and false impressions produced, in order to secure the signature. It is true that the effect of defendant's testimony as to what actually occurred, what was said and done when the plaintiff prevailed upon him to sign, was somewhat weakened by admissions, the result of a skillful cross-examination, no doubt, but there was still an issue between the parties on this question, which should have gone to the jury.

We adhere to the conclusion that a new trial must be had.

(Opinion published 53 N. W. Rep. 756.)