(Opinion published 57 N. W. Rep. 62.)

---

DAVIS & RANKIN BUILDING & MANUF'G Co. *vs.* A. H. C. KNOKE *et al.*

Argued Oct. 17, 1893. Reversed Nov. 29, 1893.

No. 8390.

**Contract Construed.**

> This case *held* distinguishable from *Gibbons* v. *Bente,* 51 Minn. 499, by reason of certain provisions inserted in the contract, by which the defendants assume a joint liability or obligation for the payment of the contract price for the erection and equipment of a certain creamery, constructed by the plaintiff's assignors.

Appeal by plaintiff, Davis & Rankin Building and Manufacturing Company, from an order of the District Court of Otter Tail County, *L. L. Baxter,* J., made January 31, 1893, denying its motion for a new trial.

Daniel J. Davis and Thomas Rankin were partners in business at Chicago, Ill., under the firm name of Davis & Rankin. As such partners they made a contract December 10, 1890, with defendants, A. H. C. Knoke and sixty others, farmers at and near Parker's Prairie in Otter Tail County, to build and equip for them a creamery at that place, for which they were to receive $5,000. Each of the subscribing farmers set opposite his name the amount he was to pay into the enterprise. They agreed to form a corporation and each farmer was to have stock to the amount of his subscription. The creamery was built and equipped and Davis & Rankin were paid $4,226 upon the price. Some of the farmers failed to pay their subscriptions and the others refused to pay more

than they subscribed and so $774 remained unpaid.    On June 10, 1891, Davis & Rankin filed a mechanic's lien upon the creamery. They became incorporated under the laws of Illinois and assigned their claim to the corporation and it brought this action to foreclose the lien, making all the subscribers defendants.    Those farmers who had paid as they agreed answered, claiming that their interest in the creamery should not be subjected to the payment of the subscriptions of their delinquent neighbors, and that by the terms of the contract with Davis & Rankin they were not individually liable or their interest in the creamery subject to the lien. The issues were tried November 26, 1892.    After argument the trial Court construed the contract to be the several contract of each of the farmers for his subscription, and that they were not jointly liable for the whole sum and dismissed the action on the merits as to the answering defendants.    Plaintiff moved for a new trial, but was denied and it appeals.

*Mason & Hilton* and *J. D. Van Dyke*, for appellant.

The decision of this case turns upon the construction of the contract.    If the obligation of the defendants is a joint one, then the Court below erred in its order dismissing the action as to the defendants who had paid their subscriptions.    The learned Court below deemed the decision in *Gibbons* v. *Bente*, 51 Minn. 499, decisive of the case at bar.    But plaintiff contends that the contract in the case at bar is radically different from the contract construed in *Gibbons* v. *Bente, supra*.    Our contract provides that in the articles of incorporation and in the by-laws provision shall be made that the private property of stockholders shall not be liable for corporate indebtedness, except that which is hereby created and to be paid to the party of the first part.    This provision is not contained in the contract construed in *Gibbons* v. *Bente*.    Our contract provides that the $5,000 is payable as follows; twenty five per cent. to be paid in cash when the creamery is completed, forty per cent. by good approved joint note payable in three months, thirty five per cent. by good approved joint note payable in six months, said notes to draw six per cent. interest.    These provisions are not contained in the contract construed in *Gibbons* v. *Bente*. *Smith* v. *Gill*, 37 Minn. 455.

*Jenkins & Treat,* for respondents.

The plaintiff relies solely upon the two paragraphs of the contract, pointed out in its brief, to support its contention that the contract creates a joint liability of defendants.   The first provision appears in the contract construed in the case of *Davis* v. *Belford,* 70 Mich. 120, which contract the Michigan Court held in that case to create a several liability on the part of the subscribers.

The contract in the case at bar contains substantially the same provisions that are found in the contracts construed in *Davis & Rankin B. & M. Co.* v. *Barber,* 51 Fed. Rep. 148; *Gibbons* v. *Grinsel,* 79 Wis. 365; *Frost* v. *Williams,* (S. D.) 50 N. W. Rep. 964.   Each subscriber placed his name to the contract for a definite sum of money, and it is unreasonable to presume that he intended to make himself liable to the other party for the whole contract price, or that the other party so understood it.

To construe the other paragraph in question as binding all the subscribers to join in the execution of notes for the deferred payments, in such form as to make each subscriber liable for the whole amount unpaid, would be repugnant to and inconsistent with the manifest intention of the parties, as shown by the other parts of the contract, and such construction should not be adopted unless the language makes it unavoidable.   *Price* v. *Grand Rapids, &c., R. Co.,* 18 Ind. 137; *Landwerlen* v. *Wheeler,* 106 Ind. 523.

VANDERBURGH, J.   This case would be controlled by the decision in *Gibbons* v. *Bente,* 51 Minn. 499, (53 N. W. Rep. 756,) but for the fact of the insertion of certain provisions in the contract here involved which are not found in the one under consideration in the case referred to.

In the contract in this case the defendants, in the first place, agreed to pay the sums severally set opposite their names in consideration of the erection and completion of a certain creamery, described in the complaint, by the plaintiff's assignors.

The contract provides for the organization of a corporation in which each subscriber should be entitled to receive stock to the amount paid by him under the contract.

The assignors of the plaintiff by the contract "agree to erect said creamery according to the within plans and specifications for the

sum of $5,000, payable in cash, or as hereafter specified in said contract." And the contract also contains the further provisions, first above referred to, viz.: "The above-mentioned $5,000 is to be paid as follows: twenty five per cent. to be paid in cash when said creamery is completed and the above-mentioned machinery placed therein, all in good running order; forty per cent. to be settled by good, approved joint note, payable in three months from the date of completion of said creamery; thirty five per cent. to be settled by good, approved joint notes, payable in six months from date of completion of said creamery." This obligation binds all the subscribers, including these defendants. They jointly assume the payment of the consideration. They agree to pay twenty five per cent. in cash of the whole consideration of $5,000, and to provide for the balance by approved joint notes. As between the plaintiff and parties of the second part, the contract does not contemplate that the liability should be apportioned.

It follows that the plaintiff is entitled to enforce its lien upon the entire property in question, and not merely upon the separate interests of such of the subscribers as have not paid.

The order appealed from will accordingly be reversed, and the case remanded, with directions to render judgment for the plaintiffs as prayed for in the complaint.

(Opinion published 57 N. W. Rep. 62.)