HILL vs. CHIPMAN and another.

*December 11, 1883 — January 8, 1884.*

PLEADING: EVIDENCE. *(1) Amendment of complaint at trial. (2) Parol evidence of written contract: immaterial error.*

SALE OF CHATTELS. *(3) Contract construed. (4, 5) Failure to deliver instalment, when a breach: measure of damages.*

1. In an action for the breach of a contract of sale, it was not error to permit the plaintiff, after he had rested his case, to amend the complaint so as to allege readiness and willingness on his part to perform the contract.

2. The admission of parol evidence of the terms of a contract which appears to have been in writing, is not a material error where the written contract itself is afterwards introduced and differs in no material respect from that shown by the parol evidence, and where the jury are instructed that the written contract determines the rights of the parties.

3. An order for 500 cords of wood contained the following direction: "Ship the first cargo, say, in ten days or two weeks, and balance to follow along as convenient to ship, say week or ten days between cargoes, if can do so as well, so as to have it convenient to handle here." *Held*, that under the order the wood was to be delivered in cargoes, the first cargo to be delivered within ten days or two weeks from the date of the order, and the subsequent cargoes at intervals of not less than one week nor more than ten days. A refusal to accept a second cargo within a week after the first would not be a breach of the contract.

4. The measure of damages upon a breach by the vendor of a contract of sale, where the purchaser has not paid in advance, is, as a general rule, the difference between the contract price of the articles sold and the market price at the time and place of delivery.

5. Where, under a contract of sale, delivery is to be made in instalments at fixed times, the failure to deliver any instalment at the time agreed is a breach of the contract, and an action therefor may be maintained without waiting until the time for the delivery of the last instalment has passed. The damages for such breach are to be ascertained in the same manner as though there were no other breaches by the vendor.

APPEAL from the Circuit Court for *Milwaukee* County.

The case is thus stated by Mr. Justice TAYLOR:

" Action to recover damages for the non-delivery of a quantity of wood, which the plaintiff claims the defendants had agreed to deliver to him at his dock, in the city of Racine, in the fall of 1880.   The complaint alleges that by an oral agreement made on or about October 1, 1880, the defendants agreed to sell to the plaintiff, and the plaintiff agreed to purchase from the defendants, 500 cords of good sawed-end maple wood, at the price of $6.25 per cord for wood cut during the winter previous, and $6 per cord for wood cut during the summer; and in case any beech wood and culled wood should be delivered on the contract the former should be at $5.25 per cord and the latter at half price; and that the defendants agreed to deliver said wood on the plaintiff's dock at Racine, as follows: The first cargo in about ten days or two weeks from the time of making the contract, and the balance in cargoes about ten days apart, so as to be convenient to handle on plaintiff's dock; the plaintiff to pay for said wood at the time of delivery. The complaint further alleges that the defendants delivered, on or about October 16, 1880, to the plaintiff, on his dock in Racine, on said contract, one cargo of wood of about 105 cords, and that plaintiff paid for the same on delivery; and then alleges that the defendants neglected and refused to deliver the balance of the wood on said contract, and claims special damages, setting out facts which he claims entitles him to such damages.

" The answer admits that there was a contract between the parties, but alleges it was in writing; and such alleged written contract is set out in the answer in the shape of an order in the words and figures following:

"'RACINE, October 6, 1880.

"' *Chipman & Raesser* — GENTS:   You may ship me 500 cords of good four-foot sawed-end maple wood, at $6.25 per cord for last winter's-cut wood, and $6 per cord for green

summer-cut wood, and $5.25 for beech wood, and half price for culled wood, if there is any delivered here. Ship the first cargo, say, in ten days or two weeks, and balance to follow along as convenient to ship, say week or ten days between cargoes, if can do so as well, so as to have it convenient to handle here. Yours truly, I. M. HILL.'

" The answer alleges that this written order was accepted by the defendants, and one cargo of 105 cords maple delivered to plaintiff thereon at his pier at Racine, on or about October 16, 1880, which was accepted by plaintiff on said contract, and paid for by him as agreed in said contract. The defendants further allege that on or about October 26, 1880, they offered to deliver to the said plaintiff, at his dock in Racine, upon said contract, another cargo of wood of about forty cords, which the plaintiff refused to accept or receive, and admit that they thereafter neglected and refused to deliver any more wood on said contract, claiming that by reason of the refusal of the plaintiff to accept and pay for the cargo of forty cords, offered upon the contract, the plaintiff violated the contract on his part, and so released the defendants from all obligation to deliver, or offer to deliver, any more wood on said contract.

" The answer further alleges that by reasonable diligence the plaintiff could have purchased said wood at his dock, of the kind and quality mentioned in his contract, at the time the same was to have been delivered by the terms of the contract, after his refusal to accept the wood as aforesaid, and prior to the winter of 1880, at a price less than the price mentioned in said contract.

"Upon the issues made by the pleadings, the case was tried by the court and a jury. The plaintiff recovered a verdict for damages, and the defendants appeal to this court."

[After the plaintiff had rested his case the defendants moved for a nonsuit on the ground that the testimony showed that the written contract was to control, and the complaint

nowhere recited a readiness and willingness to comply with the terms of the contract; nor had the plaintiff offered evidence to show that he complied with the contract on his part. The plaintiff was thereupon permitted, against objection, to amend the complaint by inserting an allegation that he was ready and willing to perform the contract on his part by paying the money as soon as the wood was delivered, and was prevented from so performing by the defendants declining to deliver the wood under the contract; and was also permitted to open the case so as to introduce evidence in support of such allegation.

The evidence tended to show that the offer of delivery of a second cargo of about forty cords, alleged in the answer to have been made on or about October, 26, 1880, was in fact made on or about October 16, 1880.]

For the appellants there was a brief by *M. C. & A. A. Krause* and *Johnson, Rietbrock & Halsey,* and oral argument by *Mr. Johnson.* To the point that the appellants should have been permitted to show the market price of wood before November 19, 1880, they cited: *Missouri Furn. Co. v. Cochran,* 8 Fed. Rep., 463; 1 Sutherland on Dam., 75, 82, 151; 1 Sedgw. on Dam. (7th ed.), 116, 136, 166, 168, 552, 601; *Hammner v. Schœnfelder,* 47 Wis., 455; *Richardson v. Chynoweth,* 26 id., 656; *Hinckley v. Beckwith,* 13 id., 31; *Shepherd v. Hampton,* 3 Wheat., 200; *Dana v. Fiedler,* 12 N. Y., 40; *Masterton v. Mayor,* 7 Hill, 61; *Bradley v. Denton,* 3 Wis., 557; *Parsons v. Sutton,* 66 N. Y., 92; Benj. on Sales, sec. 759.

For the respondent there was a brief by *Fish & Dodge,* and oral argument by *Mr. Fish.*

TAYLOR, J. Numerous errors are assigned by the appellants. The first error assigned, that the complaint did not state a cause of action, might, we think, have been properly overruled, but if there was any defect in the complaint it

Hill vs. Chipman and another.

was clearly the duty of the court to permit an amendment, as was done. The case had been tried upon its merits, and it would have been a perversion of justice to have turned the plaintiff out of court for want of some formal or technical allegation in his complaint.

The second class of errors alleged are those which it is claime d were committed by the court in permitting parol proof as to the terms of the contract, against the objection of the appellants, after it appeared that the contract between the parties was in writing. If the court below committed any errors in this respect, they could not have prejudiced the appellants, for the reason that the court afterwards submitted the case to the jury upon the theory that the written contract given in evidence on the trial should determine the rights of the parties. And if the construction given to the written contract by the court is its true construction, then there is no material difference between the parol contract set out in the complaint, and which was permitted to be proved on the trial, and the written contract which the court instructed the jury should be the basis of the rights of the respective parties. The written contract being in evidence before the court and jury, as well as the parol contract, if the two contracts are alike in all material respects it could not prejudice the appellants that the respondent was permitted to prove the contents of the written contract by parol evidence.

The learned circuit judge construed the written contract to mean that the balance of the wood, after the first cargo, was to be delivered at intervals of a week or ten days, and that consequently after delivering one cargo, which was accepted and paid for by the respondent, the appellants were not at liberty to tender another cargo within a week after the delivery and acceptance of the first cargo. This ruling becomes material upon two questions: *First*, whether the refusal to accept, receive, and pay for the cargo of forty

cords tendered to the respondent on the contract was a breach of the contract on his part; and, *second*, upon the question of damages. We are inclined to hold that the written contract ought to be construed as the learned circuit judge construed it. It seems to us that it is clear that it was not the intent of the parties that the whole 500 cords might be delivered or tendered to the respondent at the same time or on the same day. It provides, in terms, that the first cargo shall be shipped in ten days or two weeks from the date of the order; the balance to follow in cargoes a week or ten days between, so as to have it convenient to handle the same at respondent's dock; and the words, "if convenient to ship," and "can do so as well" do not make it optional with the appellants to deliver the whole 500 cords in cargoes on the same day or on consecutive days. Such a construction would either give no effect to the words, "the balance to follow in cargoes a week or ten days between, so as to have it convenient to handle here," or else those words must be held to have been inserted in the contract for the sole convenience of the appellants. That they were inserted simply for the convenience of the appellants is negatived by the words, "so as to have it convenient to handle here." These words evidently refer to the convenience of the respondent in receiving the wood. It would seem that the appellants, when they drew their answer, so construed the contract, otherwise they would not have alleged (against the fact) that the second cargo of forty cords was tendered on or about October 26, 1880, ten days after the delivery of the first cargo.

Holding that the learned circuit judge properly construed the written order for the wood, there was no breach of the contract on the part of the respondent by refusing to receive the forty cords of wood tendered after the delivery and acceptance of the first cargo of 105 cords, the same having been tendered on the same day of the delivery of the 105

cords. The evidence shows that this forty cords was not intended to be delivered on this contract when shipped by the appellants, but was tendered because it had missed its destination by reason of a storm, and then offered to respondent on his contract, as a convenient method of disposing of the same by the appellants. The tender, under the circumstances, can have little weight as evidence tending to show that the appellants understood that by the terms of their contract they were at liberty to tender a second cargo, or all the balance of the wood, after the first cargo, immediately and without the lapse of any definite period of time between the delivery of the several cargoes which were to make up the 500 cords.

. Construing the contract, as it was construed by the learned circuit judge, viz., "that the wood was to be delivered in cargoes, and that after the first delivery a second could not be made until the lapse of at least one week, and must be delivered within ten days, and so of the subsequent cargoes until all was delivered," the only other important question in the case is, whether the rulings of the court upon the subject of damages were correct. The learned circuit judge, after having determined that the contract between the parties was that the 500 cords of wood was to be delivered. in cargoes, the first cargo to be delivered within ten days or two weeks after the date of the contract, and the balance in cargoes at intervals of not less than one week or more than ten days, substantially held that there was no breach of the contract on the part of the appellants until November 19, 1880, when they notified the respondent that they did not intend to deliver any more wood upon the contract for reasons stated. In this we think the learned circuit judge erred. It is very clear to us that, upon the construction given to the contract between the parties, when the appellants failed to deliver a second cargo of wood October 26, 1880, there was a breach of the contract as to the cargo they

ought to have delivered on or before that day; and when they failed to deliver another cargo November 5, 1880, there was another breach of the contract on the part of the appellants as to the cargo which was then due on the contract; and so a failure to deliver another cargo November 15th would be another breach, if it required a third cargo or more to fill the contract for the 500 cords.

The damages to be assessed upon the breach of a contract of sale by the seller is, as a general rule, where the purchaser has not paid in advance the purchase price, the difference between the contract price of the articles sold and the market price at the time and place of delivery. One of the exceptions to this rule, which it is claimed by the respondent is applicable to the facts of this case, is that when the articles purchased are purchased for a specific purpose, and such purpose is made known to the seller at the time of making the contract, special damages resulting from the inability of the purchaser to carry out such purpose by reason of the breach of the contract, may be recovered. See *Shepard v. Milwaukee Gas Light Co.*, 15 Wis., 318, 327; *Richardson v. Chynoweth*, 26 Wis., 656; *Chapman v. Ingram*, 30 Wis., 290; *Candee v. W. U. Tel. Co.*, 34 Wis., 471; *Hammer v. Schœnfelder*, 47 Wis., 455; *Cockburn v. Ashland Lumber Co.*, 54 Wis., 619, 626. The rule is very accurately stated by the learned counsel for the respondent in their brief, where they say, "Certainly the plaintiff was entitled to recover the value of the wood on the days when it should be delivered."

When the contract is for the sale and delivery of personal property, to be delivered in instalments at fixed times, the failure to deliver any instalment at the time agreed upon is a breach of the contract, and there can be no doubt but that the purchaser could maintain an action for such breach without waiting until the time for the delivery of the last instalment had passed, and the purchaser's damages for such breach must be ascertained in the same manner and upon

the same principles of law as though there were no other breaches of the contract on the part of the vendor. The rule is stated by Sedgwick, in his work on the Measure of Damages, as follows: "Where delivery is required to be made by instalments, the measure of damages will be estimated by the value at the time each delivery should be made. So, where a contract is for the delivery of goods in equal proportions, in a given number of months, and the action for non-delivery is brought after the period stipulated for the last delivery, the proper measure of damages is the sum of the differences between the contract and the market prices on the last day of each month respectively." 1 Sedgw. on Dam. (7th ed.), 558, note; *Brown v. Muller*, L. R. 7 Exch., 319; *Missouri Furnace Co. v. Cochran*, 8 Fed. Rep., 463; *Roper v. Johnson*, L. R. 8 C. P., 167; *Ex parte Llansamlet Tin Plate Co. (In re Voss)*, L. R. 16 Eq., 155; *Tyers v. Rosedale & F. I. Co.*, L. R. 8 Exch., 305; *Boorman v. Nash*, 9 Barn. & C., 145, 152; *Frost v. Knight*, L. R. 7 Exch., 111.

In this view of the case, the learned circuit judge erred in excluding the evidence offered by the appellants, tending to show the market value in Racine of wood of the kind mentioned in the contract, in the months of October and November, and in ruling that the evidence must be confined to its value on and after November 19, 1880; and also in excluding evidence tending to show that the plaintiff could, with reasonable diligence, have purchased the cargoes which should have been delivered October 26th, and November 5th and 15th, in the market at the same price he had agreed to pay the appellants.

For the breaches of the contract which occurred previous to November 19th, it is clear that the respondent could recover only the difference between the market price and the contract price at the time when the cargoes due before that date should have been delivered, unless it was shown that the respondent could not obtain any wood in the mar-

ket to make good the cargoes which the appellants failed to deliver upon the contract at the times fixed therein. Under the construction given to the contract, it is clear that the appellants could not have compelled the respondent to receive the cargoes due after the dates at which they were to be delivered by the terms of the contract, or have recovered damages of him for a refusal to receive the same after such dates. It would seem to be equally clear that the respondent cannot wait until the time for the delivery of the last instalment had passed and then insist that the breaches of the contract shall all be deemed to have taken place on such last day for the purpose of assessing his damages.

In order to fix the amount of damages the respondent may be entitled to recover for the non-delivery of the several cargoes at the times agreed upon, it will be necessary to determine from the evidence how many cords of wood constitute a cargo under the contract. The contract does not in terms determine that question, and it must be ascertained by evidence showing what the intent of the parties was upon that subject. We have no means of determining that question from this record. If upon a new trial the evidence shall show that the respondent could not have purchased the wood from other parties by the use of reasonable diligence, to supply the place of the wood which the appellants should have delivered upon their contract, at the times the same should have been delivered, or at any time thereafter, for use in his business during the winter of 1880–1881, then we are of the opinion that the circuit judge gave the proper rule of damages in the last paragraph of his charge to the jury, changed as below, viz.: " That the measure of damages is the difference between the contract price and what the wood was actually worth on the plaintiff's dock at the times when the same should have been delivered under the contract, to be sold by him in the course of his business."

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.