| 88 | 407 |
| 92 | 581 |

## James H. Rice Co. v. Penn Plate Glass Co.

1. RESCISSION OF CONTRACTS—*Duty of the Other Party.*—Where a contract has been rescinded by a party because of his inability to perform it, it is the duty of the other party, after receiving notice, to make the loss as light as possible.

2. SAME—*Measure of Damages.*—The measure of damages when a contract for the sale of goods is rescinded, is the difference between the market price or value of the goods at the time of delivery, and the contract price if the former was less than the latter.

3. SAME—*Measure of Damages for Goods Not Yet Manufactured.*—The measure of damages as to goods not yet manufactured in pursuance of a contract, when the party received notice of its rescission, is the profit which he would have made had the contract been fully performed.

4. SAME—*Right to Sell the Goods after Notice Received.*—A party has the right, after receiving notice that the goods will not be received, to sell them, making the sale in good faith and in the mode best calculated to produce the real value of the goods.

5. MEASURE OF DAMAGES—*After Rescission Contract Exists Solely as an Element in Estimating Damages.*—After a party has elected to treat a notice of rescission as a repudiation of the contract, the contract is at an end for all purposes of performance, and exists solely for the purpose of bringing an action and as an element in estimating the damages.

Assumpsit, for breach of a contract. Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding.

Heard in this court at the October term, 1899.   Reversed and remanded.
Opinion filed April 16, 1900.

SMOOT & EYER, attorneys for appellant.

WALKER & PAYNE and GILBERT & GILBERT, attorneys for
appellee; JOHN BARTON PAYNE, of counsel.

MR. JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment in favor of appellee
and against appellant, for the sum of $15,000.   The action
was assumpsit to recover damages for the breach by appel-
lant of the following contract:

" This agreement, made this 26th day of June, 1896, by
and between the Penn Plate Glass Company, a corporation
of the State of Pennsylvania, Pittsburg, Pennsylvania, party
of the first part, and the James H. Rice Company, a corpo-
ration of the State of Illinois, party of the second part.

Witnesseth :   That the said party of the first part does
hereby agree to sell, and does sell to the said party of the
second part, and the party of the second part does hereby
purchase from party of the first part the following mer-
chandise at prices hereinafter stated, to wit:

120,000 square feet polished plate glass, stock sheets, at
the rate of 10,000 feet per month more or less, at the follow-
ing prices, to wit:

| | |
|---|---|
| 1 to 3 bracket | 18c per sq. ft. |
| 3 to 5 " | 21 " " " |
| 5 to 10 " | 38 " " " |
| 10 to 25 " | 52 " " " |
| 25 to 50 " | 57 " " " |
| 50 to 100 " | 61 " " " |
| 100 to 120 " | 63 " " " |

Over 120, special price on application.   Percentage of
brackets to run:

| | |
|---|---|
| 1 to 3 | 5 per cent. |
| 3 to 5 | 10 " " |
| 5 to 10 | 21 " " |
| 10 to 25 | 25 " " |
| 25 to 50 | 22 " " |
| 50 to 100 | 15 " " |
| 100 to 120 | 2 " " |

Party of the first part reserve the right, however, as

James H. Rice Co. v. Penn Plate Glass Co.

agreed upon, that should they not be able to give the party of the second part the full amount specified in the brackets under ten feet, that they can make up the deficiency in the above named areas, in the brackets above ten feet, without any prejudice to the contract.

Party of the first part also agree to furnish cut sizes, glazing quality, provided their stock on hand will permit, and all orders to be subject to their approval, at the following prices, to wit:

| | | | | |
|---|---|---|---|---|
| 1 to 3 | 22c | per | sq. | ft. |
| 3 to 5 | 26 | " | " | " |
| 5 to 10 | 44 | " | " | " |
| 10 to 25 | 60 | " | " | " |
| 25 to 50 | 65 | " | " | " |
| 50 to 100 | 70 | " | " | " |
| 100 to 120 | 75 | " | " | " |

Shipments of glass shall be made monthly in lots of 10,000 feet, more or less, per month, beginning first day of November, 1896, and ending last day of October, 1897. The above prices to be f. o. b. factory of the Penn Plate Glass Company, at Irwin, Pennsylvania. Terms one per cent off ten days, or thirty days net.

This agreement is subject to delays caused by strikes of the employes, or by fire, action of the elements or other causes not under control of the party of the first part.

It is further agreed that the party of the first part will give the party of the second part as much more than 10,000 feet per month as the party of the first part can, if they have any surplus; and they further agree that should they have any excess which they are at liberty to sell in the section of the party of the second part, they will give the party of the second part the option before offering it elsewhere within the specified time.

In witness whereof, the parties have hereunto set their hands and seals this 26th day of June, 1896.

PENN PLATE GLASS COMPANY,
W. L. Kann, Pres.
JAMES H. RICE COMPANY,
Wm. S. Kenny, Treas."

The word "bracket" in the contract refers to the superficial area of the glass, and 1 to 3 means a bracket not less than one square foot nor more than three square feet in area, and so as to the other brackets, 3 to 5, 5 to 10, etc.

Prior to February 25, 1897, appellee delivered to appel-

lant 35,346 square feet of glass, in pursuance of the contract, for which appellant paid $18,072.15. The amount delivered and paid for is not in controversy. , The following correspondence took place between the parties at the dates mentioned. February 25, 1897, appellant wrote to appellee as follows:

"Gentlemen: Matters have come to such a condition with this company that we are unable to accept or pay for any further shipments of glass, and we hereby notify you not to manufacture or ship us any more glass for our account from and after this date. We have thought it best to inform you of these facts at this time so as not to embarrass you or permit any further manufacture for our account."

Under date of March 1st, appellee wrote to appellant:

"We are at a loss to understand the intent or import of your letter and would respectfully request you to be more explicit. We have a contract with your company dated the 26th day of June, 1896, under which we have been shipping you glass and upon which contract is still due you about 85,000 feet. We hold ourselves in readiness for the continued performance on our part of said contract and unless we have some arrangements to the contrary we shall expect to continue making shipments on the same."

Under date of March 3d, appellant wrote to appellee:

"We beg to say there ought to be no misunderstanding on your part as to the purport and intent of our letter of the 25th ult. The notification means just what it says, and we expect you to govern yourselves accordingly. Our letter plainly notifies you not to manufacture for us or ship us any more glass."

Under date of March 11th, appellee replied:

"Your letter of the 3d inst. received. From the same we understand that you repudiate the contract you have with us dated the 26th day of June, 1896. We hereby notify you that we shall hold you responsible for any loss or damage that we incur in consequence of your action."

April 10, 1897, appellee commenced suit against appellant. It is not claimed by appellant that there has not been a breach of the contract on its part, or that it is not liable for damages, but it contends that a proper measure of

damages was not adopted on the trial, and the main question on this appeal is as to the proper measure of damages.

It does not appear from the record whether or not, when appellee received appellant's letter of date February 25, 1897, appellee had manufactured and on hand, ready for delivery, any glass manufactured by it under its contract with appellant.    Appellee's counsel say, in their argument:

"The greater part of the glass to be delivered was not in existence when the notice was given, nor when the suit was brought."

After appellee received appellant's letter of February 25, 1897, notifying it that appellant was unable to accept or pay for any more glass, and that appellee should not manufacture or ship any more, it was appellee's duty to cease manufacturing glass under the contract.    Dillon v. Anderson, 43 N. Y. 231; Danforth v. Walker, 37 Vt. 239; Collins v. DeLaporte, 115 Mass. 159.

The questions presented, therefore, are, first, on the hypothesis that appellee had manufactured and on hand ready for delivery part of the glass contracted for when it received appellant's letter of February 25, 1897, what is the proper measure of damages as to such manufactured and undelivered glass; and, secondly, what is the measure of damages as to the remainder not manufactured when appellee received that letter.

The measure of damages as to the glass manufactured and on hand ready for delivery prior to the receipt of appellant's letter by appellee, is clearly the difference between the market price or value of the glass at the place of delivery, and the contract price, if the former was less than the latter.    Benjamin on Sales, 6th Ed. p. 744, Am. note 2; Sanborn v. Benedict, 78 Ill. 309; Bagley v. Findlay, 82 Ib. 524.

The appellee also had the right, if it chose to exercise it, after receiving notice that the glass would not be received, to sell it, making the sale " in good faith and in the mode best calculated to produce the real value of the goods." Roebling's Sons v. Lock Stitch Fence Co., 130 Ill. 660, 670; Foos v. Sabin, 84 Ib. 564, 568; Kadish v. Young, 108 Ib. 170, 176; Saladin v. Mitchell, 45 Ib. 79, 85.

In such case, the difference between the contract price obtained on the sale is the measure of the damages. In the case last cited the court say:

" The difference between the contract price and the price for which it was sold in good faith, and fairly, is the measure of damages," citing cases:

It is a *sine qua non* that the sale must be fair. If fair, it is evidence of the market price or value, which latter is the true criterion.

In Scott Lumber Co. v. Haffner-Lotham Lumber Co., 91 Wis. 667, 673, the court say:

" The proper rule of damages in such cases is the difference between the contract price and the market price at the time of the breach. Richardson v. Chynoweth, 26 Wis. 656; Hill v. Chipman, 59 Wis. 211; Osgood v. Bauder & Co., 75 Iowa, 550; Brownlee v. Bolton, 44 Mich. 218. It is often said that, in case of a resale within a reasonable time, the measure of damages is the difference between the price obtained and the contract price; but this is upon the ground that the price so obtained is evidence against the original vendee of the market value, and that, if the sale is properly conducted, it fixes, as against him, the amount of the vendor's damages. It is more properly said that the price obtained at the resale is evidence of the market value. Bigelow v. Legg, 102 N. Y. 653; Case v. Simonds, 7 N. Y. Supp. 253. So the true rule is, that in an action for damages for the refusal on the part of the vendee to accept goods as agreed in his contract of purchase, the measure of damages is the difference between the market value of such goods at the time of the breach, and the price the vendee agreed to pay; and when a resale is made within a reasonable time, though made at auction, as in the case of Bigelow v. Legg, *supra*, the price obtained is evidence to be considered on the question of the market value at the time of such breach; and if a resale is made, and the evidence shows that all reasonable efforts were made to secure the best price obtainable, or that the price obtained was a fair one, it settles the question of the market value, so that the damages become liquidated. Pollen v. LeRoy, 30 N. Y. 549."

In that case it was held that the trial court properly declined to be bound by the evidence of a resale. See, also, Sedgwick on Damages, 8th Ed., Sec. 242, *et sequens*.

If there is no fixed market price or value at the place of delivery, the value must be determined in some other way. Ib., Sec. 250.    Benjamin on Sales, 6th Ed., p. 744, note 2, and cases cited.

In Bagley v. Findley, 82 Ill. 524, the court say:

"When a vendee of goods, sold at a specific price, refuses to take and pay for the goods, the vendor may store the goods for the vendor, give him notice that he has done so, and then recover the full contract price, or he may keep the goods and recover the excess of the contract price over and above the market price of the goods at the time and place of delivery, and this means the market price of such goods in such condition and in such quantity as the goods were at the time for delivery.    In such case, if goods are bought in large quantities, the market price at retail is not the standard, but the market price in large quantities; or the vendor may, giving notice to the vendee, proceed to sell the goods, in their then condition and quantity, to the best advantage, and recover of the vendee the loss, if the goods fail to bring the amount of the contract price.    The appellee adopted the latter course, and the only question of fact presented is, were the goods sold to the best advantage.    In such case the vendor takes the position of agent for the vendee, and is held to the same degree of care, judgment and fidelity that is imposed by the law upon an agent put in the custody of such goods in such condition, with instructions to sell them to the best advantage."

That the view thus expressed was the view of the presiding judge of the trial court is evident from a remark made by him on the trial.    Commenting on the difference between the prices on a sale in evidence and the prices in the contract in question, he said:    "There is no way to find the difference, unless you have relatively the same amount and the same percentage."

The measure of damages as to glass not manufactured in pursuance of the contract, when appellee received the notice of April 25, 1897, is the profit which appellee would have made had the contract been fully performed.    By the terms of the contract, appellee was to ship the glass free on board at its factory at Irwin, Pennsylvania.

On the hypothesis that the cost of manufacturing and

delivering would have been less than the contract price, the profit would have been the difference between the cost of manufacture and delivery and the contract price. Benjamin on Sales, 6th Ed. Am., note 1, p. 743; United States v. Speed, 8 Wall. 77; Dillon v. Anderson, 43 N. Y. 231, 237; Collins v. De Laporte, 115 Mass. 159; 1 Sutherland on Damages, p. 131; L. S. & M. S. Ry. Co. v. Richards, 152 Ill. 59.

In the last case the court hold that if one party repudiates a contract, the other "may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing."

The cause was tried on the part of appellee, apparently on the theory that appellee, notwithstanding appellant's notice not to manufacture any more glass under the contract, had the right to go on and manufacture in pursuance of the contract, and that the measure of damages, as to the glass manufactured after such notice, was the difference between the market prices at the different times when the glass was deliverable by the terms of the contract, and the contract price. Proceeding on this theory a great mass of evidence was introduced as to sales, and also evidence as to market prices from March to August, 1897, both months inclusive. The measure of damages as to glass manufactured when appellee received notice to cease manufacturing, being, as heretofore stated, market value, was not an element in estimating the damages as to such unmanufactured glass, and as to it, all of the evidence referred to was irrelevant. No evidence whatever was introduced as to the cost of manufacture and delivery. On the hypothesis that when appellee received notice to cease manufacturing, it had manufactured and ready for delivery, glass, the delivery of which, by the terms of the contract, was not then due, but which would become due in months thereafter, had not the contract been terminated as it was, it is an important question, in view of what occurred on the trial, at what time the damages should be estimated.

We are of opinion, from an examination of the authori-

ties, that the damages must be estimated as of the time of the breach, when, as in the present case, the vendee gives notice that he will not perform his part of the contract, and the vendor treats such repudiation as putting an end to the contract for all purposes of performance.

The precise question was decided in Masterton v. Mayor, etc., of Brooklyn, 7 Hill. 61. The plaintiffs, January 26, 1836, entered into a contract with the city of Brooklyn to furnish, cut and deliver, at the site of the city hall, all marble required for the city hall. The contract was a very large one, the total contract price being $271,000, payable in installments, as the erection of the building should progress. The contract was such that its full performance would require about five years. The plaintiffs entered on the performance of the work, and continued in such performance until July, 1837, when the defendants suspended work and refused to receive any more materials from the plaintiffs. The entire quantity of marble required was 88,819 feet, of which the plaintiffs had delivered 14,799 feet, for which they had been paid, and had on hand, ready for delivery, at the time of the repudiation of the contract, 3,300 feet. There was no controversy as to the measure of damages in respect to the marble on hand and ready for delivery, the court saying that it " was conceded to be the difference between the contract price and the market value of the article at the place of delivery." But there was a controversy as to the measure of damages in respect to the unprepared marble, of which the court say :

" It has been argued that, inasmuch as the furnishing of the marble would have run through a period of five years —of which about one year and a half only had expired at the time of the suspension—the benefits which the party might have realized from the execution of the contract, must necessarily be speculative and conjectural, the court and jury having no certain data upon which to make the estimate. If it were necessary to make the estimate upon any such basis, the argument would be decisive of the present claim. But in my judgment no such necessity exists. Where the contract, as in this case, is broken before the arrival of the time for full performance, and the opposite

party elects to consider it in that light, the market price on the day of the breach is to govern in the assessment of damages. In other words, the damages are to be settled and ascertained according to the existing state of the market at the time the cause of action arose, and not at the time fixed for full performance. The basis upon which to estimate the damages, therefore, is just as fixed and easily ascertained in cases like the present, as in actions predicated upon a failure to perform at the day."

The case of Masterton v. Mayor, etc., is mentioned with approval, as a leading case, in United States v. Speed, 8 Wall. 77, 85, and is also cited with approval in L. S. & M. S. Ry. Co. v. Richards, 152 Ill. 59, 93. See also, Sutherland on Damages, p. 116, and N. Y. & H. R. Co. v. Story, 6 Barb. 419.

In Kadish v. Young, 108 Ill. 170, the appellees sold to the appellants, December 15, 1880, 100,000 bushels of barley, deliverable to appellants at such time during January, 1881, as appellees might elect. January 12, 1881, the appellees tendered to appellants warehouse receipts for the barley, which the appellants refused to accept or pay for. The appellants contended, and the evidence tended to prove, that on the next day after the contract was made, the appellants notified appellees that they would not comply with the contract, and they insisted that it was the duty of appellees, on receiving such notice, immediately to sell the barley. The appellees did not elect, as did appellee in the present case, to treat the notice as a repudiation of the contract. The court say:

" If appellees had then the barley on hand, and had acted upon appellants' notice, and accepted and treated the contract as then broken, it would doubtless then have been their duty to have resold the barley upon the market, precisely as they did in January, and have given appellants credit for the proceeds of the sale."

The court, in the same case, p. 178, quotes with approval the following from Sedgwick on damages:

" An effort has been made in many cases by the purchaser to relieve himself from the contract of sale before the time fixed for performance, by giving notice that he

would not be ready to complete the agreement, and in these cases it has been insisted that the damages should be estimated as at the time of giving notice; but the English courts have justly denied the right of either party to rescind the agreement, and have adhered to the day of the breach as the period for estimating damages."

This language applies to cases in which notice is given by one party to a contract to the other party that he will not perform, in which case the party receiving the notice may lawfully elect to keep the contract alive for his own benefit. Kadish v. Young, *supra.*

In case the vendor should elect, notwithstanding such notice by the vendee, not to treat the notice as a repudiation of the contract, but to keep it alive, for his own benefit, then if the contract called for future deliveries at stated times, there would be a breach by the vendee, in case he should not retract his notice, at each time fixed for delivery. But in the present case the vendor treated the notice from the vendee as a repudiation by the vendee of the contract, and the question is, when did the breach occur? After appellee elected to treat appellant's notice as a repudiation of the contract, the contract was at an end for all purposes of performance, and existed solely for the purpose of bringing an action and as an element in estimating the damages. 1 Beach on Modern Law of Contracts, Sec. 409; Warren v. Forrester, 4 Rettie, 4th series, 190.

In Masterton v. Hill, *supra*, the court say:

" In other words, the damages are to be assessed and ascertained according to the existing state of the market, at the time the cause of action arose, and not at the time fixed for full performance."

The law being that if the party receiving notice that the other party will not perform, treats such notice as a repudiation of the contract, the contract is at an end, except for the purpose of an action, and not at all for any purpose of performance, it necessarily follows that the breach must be held to exist at the time the contract is so ended. After the contract is so ended, there can be no subsequent breaches of it, for the simple reason that there is no longer a contract

to be broken. In the present case appellee might have elected to ignore the notice from appellant, and have waited until the expiration of the time for the full performance of the contract before bringing suit, in which case he could have relied on breaches by appellee at the times provided by the contract for deliveries of glass, but he elected to end the contract by treating appellee's notice as a repudiation of it, and can not now rely, for any purpose, on its provisions for future deliveries. Roehn v. Horst et al., 91 Fed. Rep. 345, 349.

In view of the rules stated as to the measure of damages in respect to glass manufactured when appellee received notice to stop manufacturing, and also as to the measure of damages as to glass manufactured and ready for delivery when appellee elected to treat the notice as a repudiation of the contract, instructions five and six for appellee are erroneous. They are as follows:

5. " The jury are instructed that if they find the issues for the plaintiff, they should allow the plaintiff as damages such sum or sums as will amount to the difference between the value of the undelivered glass called for by the said contract between the plaintiff and the defendant, at the prices fixed by said contract, and the value of such glass at the current prices *at the time or times when such glass should have been accepted by the defendant according to the terms of said contract*, provided said current prices were less at such time or times than the prices fixed by the contract. This is the rule to be applied, unless you, from the evidence, believe that it was in the power of the plaintiff by reasonable diligence to reduce or mitigate such damages, and the burden of showing that it was in the power of the plaintiff by reasonable diligence to reduce its damages is upon the defendant."

6. " The jury are instructed that the rule of law is, that when a purchaser of personal property which by the terms of the purchase is to be delivered at specific times and at a specific place and at agreed prices, refuses to receive and pay for the property so purchased, or any part thereof, and if the current price has in the meantime declined, then in an action by the seller against the purchaser for refusing to comply with the contract, the proper measure of damages is the difference between the contract price or prices, and

the current price or prices at the time and place for delivery as fixed by the contract of sale and purchase. This is the rule, except in cases where the evidence shows that the seller might, by reasonable effort and diligence, have reduced or mitigated his damages, and the burden of showing ability on the part of the seller to mitigate his damages is upon the seller."

The first sentence in each of instructions five and six is erroneous in stating an incorrect rule of damages.

The position of appellee's counsel that appellee, after receiving the notice not to manufacture any more glass under the contract, was obliged to go on manufacturing, is untenable so far as appellant is concerned, and was well answered by the presiding judge of the trial court in the following colloquy:

Mr. Payne: "The factory had to run, because we had other contracts; we were compelled to make this glass."

The Court: "You had to run whether Rice took the glass or not."

It would seem absurd to suppose that appellee would have ceased to do business had the contract with appellant not been made, but even if such were the case, it would have no right to manufacture glass under the contract to appellant's detriment, after receipt of notice not to do so.

There are very numerous exceptions by appellant in the record, but as adherence to proper rules in estimating the damages will exclude on another trial most, if not all, the matter objected to, we think it unnecessary to add anything to what has been said.

The judgment will be reversed and the cause remanded.