LANDES v. KLOPSTOCK.

LIEBMAN et al. v. SAME.

(Circuit Court of Appeals, Second Circuit. May 10, 1918.)

Nos. 208, 209.

1. SALES ⬿82(3)—ACTION FOR PRICE—CONDITIONS PRECEDENT—SHIPMENT OF GOODS.

Under bought and sold notes for sugar payable June 15, 1917, and entitling the seller to 10 days' notice of shipment, the shipment did not become a condition precedent to the buyer's absolute obligation to pay on June 15th unless he had given the contract notice that he required shipment on June 15th, and where he failed to do so the seller had a right of action, unless his conduct excused the buyer's default.

2. SALES ⬿332—NOTICE OF SHIPMENT—SALE ON BUYER'S ACCOUNT.

Under bought and sold notes for sugar deliverable and payable June 15, 1917, entitling the seller to 10 days' notice of shipment, the seller's notice to the buyer that if he was not given the contract shipping notice he would sell on the buyer's account did not entitle him to sell on failure of such notice, as the buyer might pay before shipment, and as he was not required to give any shipping notice, though he could not get delivery without it.

3. CONTRACTS ⬿316(5)—REPUDIATION BY BUYER—REMEDIES OF SELLER.

If the promisee insists upon performance, he waives the right to sue upon the promisor's repudiation of the contract, especially where the promisor does not himself retract in season.

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Southern District of New York.

Actions by Jacob Landes, doing business as J. Landes, and by Louis Liebman and Nathan Liebman, copartners doing business as Liebman Bros., against Paul Klopstock, doing business as the Paul Klopstock Company. Judgment in each case for defendant upon a directed verdict, and plaintiffs bring error. Affirmed.

Writs of error from judgment of the District Court for the Southern District of New York (Manton, J., presiding) upon a directed verdict for the defendant, after trial with a jury. The jurisdiction of the court depended upon diverse citizenship. The case was this:

On April 18, 1917, the two plaintiffs each received and delivered bought and sold notes for the sale to the defendant of 200 and 300 tons of sugar already identified in the port of New York. A copy of one of these notes for 200 tons is as follows:

"New York, April 18, 1917.

"Bought from J. Landes,
"Address, 192 Division Ct., City.
"Sold to Paul Klopstock & Co.,
"Address, 17 Battery Place, City.
"Terms: Net cash—payable on presentation of shipping receipts. Shipment to be made by May 15. Payment in full to be made by May 15, whether or not shipment is made. 10 days'. notice of shipment.
"Basis                    723                    Freight
              "(f. o. b. New York)
"Routing: 200 (two hundred) tons fine granulated, $7.23 net cash.
"Accepted: Paul Klopstock & Co.
                                        "M. G. Wanzor & Co."

Subsequently the time of payment and delivery under these contracts was extended for 30 days; that is, until June 15, 1917.

On May 23, 1917, the buyer wrote the following letter to each of the plaintiffs:

"Gentlemen: Referring to your favor of the 20th demanding payment for 300 tons of granulated sugar you claim to have sold this firm: The writer, who has just returned from Europe, had this matter brought to his attention for the first time yesterday. It seems from investigations made by the writer that this was a private speculation on the part of Mr. Irving Kanegieser, our export manager, which was absolutely unauthorized by the writer. It is a well-known fact to all our trade that Mr. Kanegieser's authority to make any purchases whatsoever during the writer's absence is only effective on definite and specific instructions and authority from the writer in the case of each transaction, and in this case no such instructions or authority were ever given him. Because of this we are compelled, much to our regret, to refuse to assume any responsibility whatsoever in connection with this matter, and to advise you that Mr. Kanegieser's connection with this firm will cease in the near future."

The question of Kanegieser's authority to bind the defendant was not raised upon the argument.

Thereafter plaintiffs Liebman Bros. on May 31, and the plaintiff Landes on June 1, wrote identical letters, of which the following is a copy:

"Gentlemen: Pursuant to the contract between you and ourselves, dated April 18, 1917, and thereafter extended to June 15, 1917, as per your instructions, we hereby request that you give us shipping instructions for the sugar therein described on or before June 5, 1917, as provided for in the contract. In the event that we do not receive these instructions in accordance with the terms of the contract, we will sell the sugar for your account and look to you for any damage sustained by us."

Receiving no notice in accordance with the demands in them, the plaintiffs on June 11, 1917, four days before the time, sold the sugar on the defendant's

account, and seek now to charge him with the difference between the sale price and the contract price.

Bigelow & Wise, of New York City (Ernest A. Bigelow, of New York City, of counsel), for plaintiffs in error.

Arthur Mayer, of New York City, for defendant in error.

Before WARD and ROGERS, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). [1, 2] This case, strictly speaking, does not involve the doctrine of anticipatory breach, because the action was brought after June 15th, upon which day the defendant's obligation to pay for the sugar became absolute. The shipment of the sugar could not become a condition precedent to that obligation, unless the defendant had given notice on or before June 5th that he required shipment on June 15th, which he never gave. Therefore, unless the plaintiffs by their conduct had at that time excused the defendant's default, their right of action is clear. In the consideration of the case, however, the doctrine of anticipatory breach does become indirectly involved.

The defendant's excuse is the plaintiffs' letters of May 31st and June 1st, announcing that, if the defendant did not advise them on or before June 5th where they should ship the sugar, they would sell it on his account. This they clearly had no right to do, because the defendant might, if he chose, pay before shipment, a possibility contemplated in the contract. He was under no duty to give 10 days' notice at any time, though he could not get delivery without it. Such a notice, followed by the sale of the sugar, excused the defendant's performance, unless it was itself in turn excused by the defendant's letter of May 23d, which was a total repudiation of the contract. It is upon this last question that the case turns.

Upon receipt of the defendant's letter the plaintiffs need have done nothing; they could have waited till June 15th and sued the defendant under any of the remedies open to a seller, or they might themselves have declared the contract at an end, save for their right to sue at once under the doctrine of anticipatory breach. It is perfectly clear that they did not mean to declare the contract at an end. Three times in their letters they speak of the defendant's duty under the contract to give the notice, and they leave no ground for doubt that they intended to hold the defendant to his performance according to the contract as they understood it.

We need not consider whether, having taken that attitude towards the contract, the plaintiffs were excused from further performance if the defendant's obligation had been conditional. The English rule is that the promisee, if he means to ignore the repudiation, must still perform, quite as though the promisor had not repudiated. The language of Lord Cockburn in Frost v. Knight, L. R. 7 Ex. 111, 112, has been accepted generally, and in Dalrymple v. Scott, 19 Ontario Appeals, 477, it was the basis of the decision. True, it is difficult to see how these cases can be reconciled with the well-settled rule in this country that, when the promisor repudiates, the promisee not only

need not perform, but, if he chooses to perform, does so on his own account. Clark v. Marsiglia, 1 Denio (N. Y.) 317, 43 Am. Dec. 670; Dillon v. Anderson, 43 N. Y. 231; Danforth v. Walker, 40 Vt. 257; Moline Scale Co. v. Beed, 52 Iowa, 307, 3 N. W. 96, 35 Am. Rep. 272; Heaver v. Lanahan, 74 Md. 493, 22 Atl. 263; Gibbons v. Bente, 51 Minn. 499, 53 N. W. 756, 22 L. R. A. 80; Davis v. Bronson, 2 N. D. 300, 50 N. W. 836, 16 L. R. A. 655, 33 Am. St. Rep. 783. In the case at bar we have not that question, because the plaintiffs had no conditions precedent to perform; they were required to do nothing until the day of payment arrived. We may therefore assume that the American rule obtains.

They chose, on the other hand, to take positive action, and in that they erred, for only two courses were open to them, and they attempted an intermediate. They might have declared the contract at an end and sued at once. We pass the question whether any other declaration is necessary beyond the bringing of an action; we do not hold that there must be a prior acceptance of the rescission, so called. They did not accept the repudiation in any way; on the contrary, they refused to recognize it, quite as clearly as though they had said: "We decline to recognize your right to repudiate." Having so ignored it, as was their right, they added a condition, not authorized by the contract, upon which their own continued performance was to depend. This they had no right to do. Rubber, etc., Co. v. Manhattan, etc., Co., 221 N. Y. 120, 116 N. E. 789. It is true that they supposed they were acting under the contract, and the case is a hard one, but no harder than any other in which a party acts upon an interpretation of a contract, with which the courts do not agree. That is a hazard all must run.

[3] It is suggested that, as the plaintiffs had the right to declare an immediate breach, they might accord the defendant the right to retract, and that their letters should be taken as equivalent to a declaration that, if the defendant persisted in his repudiation until June 5th, they would accept the repudiation. They might have done this; but they did not. The question is whether we may regard their insistence upon the contract, which they misunderstood, as in effect a declaration that it was at an end. While we have avoided deciding whether such a declaration is necessary in order to sue upon a repudiation, either before or after the stipulated time of performance, we do hold that, if the promisee insists upon performance, he waives the right so to sue upon the repudiation, certainly if he does not himself retract in season.

Judgments affirmed, with costs.