### SRERE et al. v. GOTTESMAN et al.

(District Court, S. D. New York. November 18, 1918.)

JUDGMENT ⬡585(4)—MATTERS CONCLUDED—MATTERS WITHHELD.

Where a seller of pulp, to be delivered monthly, by letter expressly repudiated and canceled the contract for defaults in payments, and the purchaser afterward, in an action between them, unsuccessfully counterclaimed for wrongful breach on grounds other than the letter, which was not pleaded nor in issue, the judgment was a bar to a subsequent action by him for failure to make further deliveries.

At Law. Action by Alfred A. Srere and Harry Srere against Mendel Gottesman and David S. Gottesman. On motion by both parties for direction of verdict. Verdict directed for defendants.

This action is upon a contract between the parties by which the defendant agreed to deliver 4,800 tons of pulp to the plaintiff at $1.95 per 100 pounds, deliveries to be monthly at 150 tons a month, beginning May, 1915, and ending December, 1917. The contract contained the following provisions, which are the only ones of importance: "Each shipment under this contract to be considered as a separate contract, and default of one or more shipments not to invalidate the rest of the contract." Again: "If the buyer makes default in any payment, * * * seller may at his option cancel future deliveries."

In October of 1915 the parties had a difference as to the execution of the contract, and correspondence passed between them, which it is not necessary here to detail. The controversy resulted in a claim by the defendants against the plaintiff in the sum of $3,482, for which they made claim. On February 3, 1916, the defendants wrote as follows to the plaintiffs: "We have repeatedly written you within the last few months regarding your account, which is in a deplorably overdue condition. We now wish to serve notice on you that unless settlement is in our hands not later than February 8th we will cancel the balance of the contract in accordance with claim 10." The account referred to was for the sum mentioned, and was made up of three items. Clause 10 is the clause already quoted, for cancellation.

As the controversy still continued, the defendants sued the plaintiff in the Supreme Court of New York, and the cause was afterwards removed to this court, claiming in the sum of $3,482.19 as the amount due under the contract. To this the present plaintiffs (the defendants therein) counterclaimed upon the contract in question. They laid the breach in the sixth article of their counterclaim as follows: "That in or about the month of October, 1915,

the defendants not being in default under the terms of said agreement, the plaintiffs, notified defendants that they declined and refused to continue the delivery of pulp under said agreement, and that they considered the same terminated, and the said plaintiffs have ever since declined and refused to perform said agreement, to the defendants' damage of $200,000." The defendants here required a bill of particulars of the default alleged in the said sixth article, which was accorded by the plaintiffs here, and which consisted of the correspondence which passed between the parties during the months of October, November, and December, but did not set up the letter of February 3, 1916.

That cause came on for trial in this court before Judge Mayer, and resulted in a verdict for the defendants here upon their complaint, but not for the whole sum; their recovery being $2,209.29, two of the three items of their claim being disallowed. The counterclaim was left to the jury, who found against the plaintiffs here. It appears from the charge of Judge Mayer, as indeed necessarily would have been so, that no question arose in that cause of the letter of February 3, 1916. The defendants' complaint in that suit was filed on March 16, 1916, and the counterclaim in July, 1916, each of them, consequently, after the letter of February 3d. On January 8, 1917, judgment was entered in the former action for the sum of $2,029.29, without mention of the counterclaim.

The present complaint sets up the contract and alleges the breach as follows in article fifth: "Said agreement being in full force and effect, and the plaintiffs being entitled to deliveries of the said pulp during the year 1917 as therein provided, plaintiffs have neglected and refused to deliver the monthly installments of 150 tons each of pulp due under said contract for the months of January, February, March, April, and May, 1917, although repeatedly requested so to do, and on or about the 27th day of February, 1917, defendants notified plaintiffs that they considered said agreement terminated, and that no further pulp would be shipped thereunder, to the defendants' damage in $200,000."

The plaintiffs here introduce in evidence a letter of February 27, 1917, of which the important part is as follows: "We have heretofore advised you that, owing to your default under the contract, no further pulp would be shipped to you, and as all matters in connection with said contract, default thereunder, and termination thereof were litigated in the action recently tried in the United States District Court of this city, we do not see that there is anything further to be said in the matter, as our relations have been completely terminated." It is agreed that no deliveries were made during the year 1917.

Delevan A. Holmes, of New York City, for plaintiffs.
Harold Nathan, of New York City, for defendants.

LEARNED HAND, District Judge (after stating the facts as above). The plaintiffs attempted in the former action to recover upon a repudiation of the contract through the October correspondence, and failed. They necessarily exercised their putative option, arising by virtue of that correspondence, to declare the contract at an end through the defendants' breach. This they might have done, had there been such a breach. Central Trust Co. v. Chicago Auditorium, 240 U. S. 581, 36 Sup. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580; Johnstone v. Milling, L. R. 16 Q. B. D. 460; Landes v. Klopstock, 252 Fed. 89, —— C. C. A. ——. But I shall assume, for the purposes of argument, that they failed because the defendants had not repudiated the contract at all by the October correspondence. If so, the effect of the judgment in that action would not put an end to the contract; the plaintiffs had missed their blow and struck in the air.

In fact, nevertheless, the defendants had already expressly repudiated the contract, not by the October correspondence, but by the let-

ter of February 3, 1916. This, if wrongful, gave the plaintiffs a second option, and, I may also assume, the only real one, to treat the contract as terminated by a breach, or as continuing. Had the counterclaim been filed before February 3, 1916, it would not have affected their rights under that letter, but it was not so filed. The second option, the only real one, had arisen before the counterclaim.

Now, it must be admitted that the plaintiffs never actually elected to treat the letter of February 3, 1916, as a repudiation; they confined themselves to the October correspondence. If, therefore, they were free to reserve their rights under the letter, the contract was not at an end on February 27, 1917. I think they were not so free, but that, having elected to declare the contract at an end in July, 1916, by filing the counterclaim, that election included, not only the grounds for it which they asserted, but all grounds which they had. The position of treating the contract as wrongfully repudiated was not determined by any wish to establish a fact, but a legal relation. If they might reserve from consideration any of the grounds upon which that relation might stand, they could litigate twice the same "cause of action"; that is, the same legal position towards the mutual obligations of the parties. This they may not do; the judgment in the first action would be a bar. United States v. California & Oregon L. Co., 192 U. S. 355, 24 Sup. Ct. 266, 48 L. Ed. 476; Watts v. Weston, 238 Fed. 149, 151 C. C. A. 225.

The judgment, therefore, concluded the plaintiffs from asserting that the defendants were wrong in repudiating the contract. Only in case they were wrong could the contract endure, because a rightful repudiation put an end to it and a repudiation there had been. The contract could not persist after the judgment, and no future deliveries were due under it. Therefore this action will not lie.

I direct a verdict for the defendants.