(93 South. 834)

## UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION v. SHERMAN & ELLIS, Inc. (1 Div. 193.)

(Supreme Court of Alabama. May 18, 1922. Rehearing Denied June 30, 1922.)

1. United States ⏝125—State court had jurisdiction in action against Emergency Fleet Corporation.

State courts are not without jurisdiction in actions against the Emergency Fleet Corporation incorporated under Shipping Act (U. S. Comp. St. §§ 8146a–8146r), although all of its capital stock is owned and held by the United States.

2. Insurance ⏝188(1)—Agents of reciprocal exchange "real party in interest" in suit for premiums.

Where, under a separate instrument, plaintiff was attorney in fact of each subscriber of Employers' Reciprocal Exchange and given authority to collect all moneys, make disbursements and settlements, and the purpose of the instrument was to clothe the attorney with power to enable assured through the attorney to exchange contracts of indemnity with other subscribers, and as compensation the attorney could deduct 30 per cent., the attorney in fact was the real party in interest and entitled, under Code 1907, § 2490, to bring an action for recovery of premiums.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Real Party in Interest.]

3. Principal and agent ⏝124(2)—Evidence justified submission to jury whether defendant entered into indemnity contract through its agent.

In an action for premiums on a policy of indemnity insurance, evidence held sufficient for the jury on the question whether another company was in fact agent of defendant with power to bind defendant for payment of premiums.

4. Insurance ⏝181—After breach of executory contract, plaintiff's recovery limited to damages for breach.

Where the attorney in fact to the individual subscribers of an indemnity exchange operated an emergency hospital at defendant's plant and furnished a nurse and physician as a part of the services incidental to the policy of insurance, and the policy provided for cancellation by a subscriber only on April 1st and July 1st, and where a subscriber on April 10th notified the attorney in fact that his services were no longer needed and refused him admission to the plant, no services being performed after April 10th, as between April 10th and July 1st, the contract was executory, and the attorney's recovery was limited to damages for its breach, and he could not recover premiums due thereunder as a continuing contract.

Appeal from Circuit Court, Mobile County; Saffold Berney, Judge.

Action on account by Sherman & Ellis, Incorporated, against the Mobile Shipbuilding Company and United States Shipping Board Emergency Fleet Corporation to recover premiums on policy of liability insurance. From a judgment for plaintiff, the United States Shipping Board Emergency Fleet Corporation appeals. Reversed and remanded.

Harry M. Daugherty, Atty. Gen., A. D. Pitts, U. S. Atty., of Selma, J. O. Middleton, Asst. U. S. Atty., of Mobile, Elmer Schlesinger, Gen. Counsel, of Washington, D. C., Chauncey G. Parker, Special Counsel, of Newark, N. J., Geoffrey Goldsmith, Asst. Counsel, of Washington, D. C., U. S. Shipping Board Emergency Fleet Corporation, for appellant.

The court had no jurisdiction over the defendant United States Shipping Board Emergency Fleet Corporation. 202 U. S. 69, 26 Sup. Ct. 568, 50 L. Ed. 935; 254 U. S. 491, 41 Sup. Ct. 165, 65 L. Ed. 368; (D. C.) 261 Fed. 716; (D. C.) 261 Fed. 440; (D. C.) 265 Fed. 955; (D. C.) 267 Fed. 283; (D. C.) 266 Fed. 747; (D. C.) 268 Fed. 624; (D. C.) 270 Fed. 638. The plaintiff, being merely an agent, is not entitled to recover. Code Ala. 1907, § 2489; 128 Ala. 361, 30 South. 674, 86 Am. St. Rep. 152; 3 Ala. App. 537, 57 South. 266; 174 Ala. 490, 57 South. 34; 9 Ala. App. 597, 63 South. 790; 10 Ala. App. 414, 65 South. 89. The United States Shipping Board Emergency Fleet Corporation was not an undisclosed principal of the Mobile Shipbuilding Co. 97 Ala. 275, 12 South. 276; 97 Ala. 681, 12 South. 295; 96 Ala. 220, 11 South. 390; 94 Ala. 514, 10 South. 391; 194 Ala. 273, 69 South. 926; 179 Ala. 339, 60 South. 815, Ann. Cas. 1915C, 888; 195 Ala. 344, 70 South. 277; 3 Ala. App. 302, 57 South. 130; 174 Ala. 521, 56 South. 571. Plaintiff was not entitled to recover premiums due from April 10 to July 1, 1920. 146 Ala. 120, 41 South. 681; 2 N. D. 300, 50 N. W. 836, 16 L. R. A. 655, 33 Am. St. Rep. 783; 111 U. S. 264, 4 Sup. Ct. 390, 28 L. Ed. 423; 149 Ala. 251, 42 South. 988; 153 U. S. 552, 14 Sup. Ct. 876, 38 L. Ed. 814; 199 U. S. 119, 26 Sup. Ct. 8, 50 L. Ed. 115, 4 Ann. Cas. 406; 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953. The United States Shipping Board Emergency Fleet Corporation did not ratify the contract of insurance, the subject of this suit. 65 Ala. 113; 68 Ala. 461; 71 Ala. 290; 85 Ala. 300, 4 South. 828, 7 Am. St. Rep. 48; 107 Ala. 312, 19 South. 966, 54 Am. St. Rep. 93; 117 Mass. 103; 171 Mass. 516, 51 N. E. 9, 41 L. R. A. 617, 68 Am. St. Rep. 446.

Inge & Kilborn, of Mobile, and Gallagher, Kohlsaat, Rinaker & Wilkinson and Newman, Poppenhusen, Stern & Johnston, all of Chicago, Ill., for appellee.

The court had jurisdiction to enter judgment against United States Shipping Board Emergency Fleet Corporation. 254 U. S. 491, 41 Sup. Ct. 165, 65 L. Ed. 368; (D. C.) 247 Fed. 893; (D. C.) 261 Fed. 716; 9 Wheat. 904, 6 L. Ed. 244; (D. C.) 261 Fed. 440; (D. C.) 265 Fed. 955; (D. C.) 267 Fed. 283; (D. C.) 269 Fed. 319; (D. C.) 270 Fed. 296; (D. C.) 266 Fed. 896; (D. C.) 266 Fed. 897; 187 N. Y. Supp. 695. The contract was not void for want of insurable interest of appellant. 161 U. S. 57, 16 Sup. Ct. 488, 40 L. Ed. 616; 14 R. C. L. 910; Acts Ala. 1919, p. 206, §§ 8, 27, 31. Appellant ratified the contract, and became liable for premiums due thereunder. 10 Ala. 755, 44 Am. Dec. 505; 85 Ala. 292, 4 South. 828, 7 Am. St. Rep. 48; 65 Ala. 113; 21 R. C. L. 930. Appellee was the real party in interest, and properly brought the suit. Code Ala. 1907, § 2489. The verdict was based upon the proper measure of damages. 64 Ala. 299, 38 Am. Rep. 8; 84 Ala. 508, 4 South. 426, 5 Am. St. Rep. 387; 102 Ala. 228, 14 South. 572; 12 Ala. 720; 7 Ala. 952; 100 Ala. 269, 14 South. 46; 164 U. S. 578, 17 Sup. Ct. 198, 41 L. Ed. 560; 118 U. S. 394, 6 Sup. Ct. 1132, 30 L. Ed. 118.

GARDNER, J. This suit was brought by Sherman & Ellis, Inc., against the Mobile Shipbuilding Company (hereinafter referred to as the Mobile Company), and the United States Shipping Board Emergency Fleet Corporation (hereinafter referred to as the Fleet Corporation), for the recovery of premiums due under a policy to indemnify against legal liability imposed by the Workmen's Compensation Act of Alabama (Acts 1919, p. 206). This policy was issued by the plaintiff on December 18, 1919, to cover a period from January 1, 1920, to January 1, 1921. In the policy the name of the assured is given as "Mobile Shipbuilding Company and [or] United States Shipping Board Emergency Fleet Corporation, as their interests may appear."

[1] The first count of the complaint was the common count claiming the sum due by account; and the cause was submitted to the jury upon this count of the complaint and the general issue thereto. The Fleet Corporation filed a special plea to the jurisdiction of the court, setting up in substance that it was a corporation organized under the laws of Congress enacted for the District of Columbia, and was incorporated in pursuance of the Shipping Act of September 7, 1916 (U. S. Comp. St. §§ 8146a–8146r); that all of its capital stock has been paid, and is now owned and held by the United States of America. The plea contains other averments to the effect that the corporation was acting under direction of the President of the United States, as authorized by the act of Congress, and that, in fact, its acts were the acts of the United States, and that therefore this suit was in effect a suit against the United States, and that this court is without jurisdiction.

This question has recently been considered and determined by the Supreme Court of the United States in the cases of Sloan Shipyards Corporation et al. v. United States Shipping Board Emergency Fleet Corporation and the United States (No. 308), Astoria Marine Iron Wks. v. U. S. Shipping Board Emergency Fleet Corporation (No. 376), U. S. Shipping Board Emergency Fleet Corporation, etc., v. Roger B. Wood, Trustee (526), 258 U. S. 549, 42 Sup. Ct. 386, 66 L. Ed. —, October term, 1921. The decision in those cases is conclusive adversely to the contention of the corporation, and the court below therefore ruled correctly in sustaining the demurrer to this special plea.

[2] The other questions presented largely turn upon questions of fact, and need no elaborate discussion. It is first insisted that plaintiff should not recover for the reason that it is not shown to be the party of real interest in the subject matter of this litigation. In policies of insurance, of the character issued by Sherman & Ellis, Inc., the assured was a subscriber to what is known as Associated Employers' Reciprocal Exchange, referred to as the Reciprocal Exchange. This exchange was composed of some 6,000 employers, and the amount of premium to be paid was determined upon the pay roll of the assured as to the wage classification of labor. In the policy it is stated, where the word "exchange" occurs it should be construed to mean the subscribers collectively, but that no liability shall be imposed upon the subscribers other than severally, and that in no event shall a subscriber be made liable with the others. Sherman & Ellis, Inc., were constituted the attorney in fact for each subscriber under a separate instrument, providing the issuance of the policies. They were given authority to collect all moneys, and to make all disbursements and settlements, and defend all suits; the power of attorney stating the purpose of the instrument is to clothe the attorney with the power necessary to enable the assured through the attorney in fact to exchange contracts of insurance and indemnity with other subscribers, provided, however, that said attorney should have no power to bind the insured jointly with any other subscriber. As compensation for its services, as well as in consideration of the attorney defraying all necessary expenses incident to conducting the exchange of contracts of insurance and indemnity, with certain exceptions and expenses of handling and investigating accidents, adjusting and defending claims, the said attorney was authorized to deduct 30 per cent. of all re-

ceipts, and the subscriber receive nothing except from a surplus fund, if any remained after the disbursement provided for. If there is no surplus fund after a collection of the premiums from the subscribers, the attorney has the right to call upon the subscribers to pay in addition to the specified premiums an additional amount equal to the amount of said premiums. The services were performed by the plaintiff, as attorney in fact, pursuant to the stipulation of the power of attorney, and the policy of insurance, and we are of the opinion that the plaintiff was the real party in interest, and the party entitled under section 2490 of the Code to bring this action for the recovery of premiums due thereunder.

[3] It is most strenuously urged that the Fleet Corporation was entitled to the affirmative charge; but whether or not it in fact entered into a contract of insurance or otherwise with the plaintiff, or did, indeed, have an insurable interest in the subject-matter of the policy, were questions which were submitted by the court for the jury's determination, and we think correctly so. True, the power of an attorney was executed by the Mobile Company, and the policy first issued and delivered to it; but it also insured the Fleet Corporation as its interest might appear. There was evidence tending to show that the Mobile Company had a capital investment of several million dollars—all of which was furnished by the Fleet Corporation with the exception of $25,000 paid in by the incorporators sometime after incorporation. The Mobile Company was engaged in the manufacture, on a large scale, of ships, exclusively for the Fleet Corporation, and the pay roll, as shown by the evidence, discloses that great number of workmen were so employed. The money for the operation of the plant was furnished by the fleet corporation, and practically all material used in the plant was ordered in its name. The Fleet Corporation had a resident auditor to pass on all bills presented, a resident material inspector, and inspectors to inspect the work as it progressed. The evidence clearly discloses that the Fleet Corporation exercised close supervision over all the work being done by the Mobile Company.

While there seems to be some conflict as to whether or not the Fleet Corporation actually fixed the salaries and wages, yet it is admitted that it approved the rates of pay. The witness Brittain testifying for the appellant on cross-examination being asked the question, "Isn't it a fact that the United States Shipping Board Emergency Fleet Corporation had absolute control of the operation of the plant of the Mobile Shipbuilding Company?" answered, "Only by sufferance." The evidence further tends to show upon this question of insurance that the president of the Mobile Company insisted that the contract of insurance must meet with the approval of those in authority of the Fleet Cor-

poration; that the account for the first quarter premium was forwarded to the authorities of the Fleet Corporation and retained by them without objection, and likewise a copy of the insurance policy was forwarded to these authorities; that a representative of the plaintiff called at the office of the Fleet Corporation about February 15, 1920, and had a conversation with the chairman of the board in regard to this contract, and that he was by the chairman referred to the vice president of the Fleet Corporation, and plaintiff's representative testifies that he explained to the vice president in detail the contract which had been issued to the Mobile Company and to the Fleet Corporation, and was assured by the vice president that it was acceptable to him; that a Mr. Barrett was called in, and directed by the vice president to have a copy of the contract forwarded to the office. The Fleet Corporation offered no testimony in contradiction of this representative.

We make no effort here to enter into any detailed statement or discussion of the evidence presented upon these issues of fact. Suffice it to say we are persuaded, after a careful examination of the record, that the proof was sufficient for submission to the jury to determine whether or not the Mobile Company was in fact but the agent of the Fleet Corporation with full power and authority to bind the Fleet Corporation for the payment of premiums on the contract here involved. This conclusion also determines adversely to the defendant the question of its insurable interest.

[4] The plaintiff as a part of its service operated the hospital which was at the Mobile plant, employing a trained nurse and physician for the treatment of those who were injured. On April 10, 1920, they were notified their services were no longer needed, and, in fact, that the contract entered into was canceled. The policy of insurance, however, provided for a cancellation of the contract upon 10 days' notice prior to the 1st of April, July, and October; the cancellation notice therefore did not become effective under the terms of the contract for the annulment thereof until July 1st. The plaintiff continued to offer the same services after April 10th, but the offer was declined, and finally the representative denied admission to the yards of the plant. The trial court instructed the jury, in effect, that if these services were tendered and wrongfully refused by the defendant, plaintiff would be entitled to recover the premiums prescribed by the policy of insurance. This conclusion was evidently based upon those decisions holding that where the contract to perform personal services for another for a particular term stipulated, and the party is discharged without fault before the expiration of the term, he may, if he wishes, treat the contract as still continuing, and holding himself in readiness

to perform, recover the entire wages due on the expiration of the term—of which the case of Strauss v. Meertief, 64 Ala. 299, 38 Am. Rep. 8, is illustrative.

We have reached the conclusion that the facts of this case do not bring it within the influence of these authorities. The policy of insurance stipulated that the assured may provide at the time of the accident such immediate surgical relief as may be necessary, and that this may be done at the cost of the "exchange." As we understand the contract here under consideration, the furnishing of the nurse and medical attention was a part of the services which were incidental to the policy of insurance, and doubtless deemed by the plaintiff to be the most economical manner of meeting expenses, which it was to its advantage to reduce. The larger part of the contract, so far as the assured was concerned, evidently related to indemnity against liability under the Workmen's Compensation Act, and the mere fact that such services were rather incidental thereto could not serve the plaintiff to bring its case within the influence of the principle recognized in the foregoing authorities. The plaintiff performed no services after April 10, 1920, and nothing paid under the policy of insurance after that date. The count upon which the cause was submitted to the jury was not upon the policy of insurance, but upon a common count for money due by account. So far as the time between April 10th and July 1st was concerned, the contract was executory, and we are of the opinion the plaintiff was limited to recovery for damages for a breach thereof and could not recover the premiums due thereunder as a subsisting and continuing contract.

In Worthington v. McGarry, 149 Ala. 251, 42 South. 988, this court, speaking to a question involving this principle, said:

"The question, then, is simply this: Whether or not a party, entitled to a named consideration upon the performance of two services, can claim the compensation upon the performance of one of the services, alleging and proving that he was prevented in endeavoring to perform the other by the defendant. We think he cannot. The defendant, by directing the plaintiff not to proceed in reference to one of the services, altered and breached the contract. There was an implied term in the contract that the plaintiff should have an opportunity to perform both services, and, when his performance was prevented or dispensed with as to one, the contract was thereby set aside by the employer, and the plaintiff was relegated to a suit for damages for a breach of the contract or one on a quantum meruit for services actually performed."

The question is fully discussed in the case of Davis v. Bronson, 2 N. D. 300, 50 N. W. 386, 16 L. R. A. 655, 33 Am. St. Rep. 783, and many authorities cited in the note thereto. This case was cited with approval by this court in Davis v. State, 146 Ala. 120, 41 South. 681. See, also, Aarnes v. Windham, 137 Ala. 513, 34 South. 816; Darden v. James, 48 Ala. 33.

The premiums were figured on the total amount of wages paid employés during each quarter. The assured had the service and was given the protection, but plaintiff was prevented from performance of the services for the second quarter by the defendant's direction. As to the second quarter, therefore, we do not think there could be recovery for these premiums on the common count; but plaintiff is remitted to a suit for damages for a breach of the contract.

We are of the opinion, therefore, that the trial court committed error in so instructing the jury. For which the judgment must be reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.